Chambers *et al. v.* Butcher *et al.*

No. 9583.

## CHAMBERS ET AL. *v.* BUTCHER ET AL.

VERDICT.—*Special Findings.*—Where there is a general verdict, and also facts specially found upon questions sent to the jury, the latter will not affect the former, unless, when all taken together, they are in irreconcilable conflict with it; it is not enough that one of them, considered separately, shows such conflict.

SAME.—*Interrogatories.*—If two answers of the jury to interrogatories be in conflict with each other, both must be disregarded, in considering whether the general verdict is controlled by the special findings.

SAME.—*Venire de novo.*— *Issue.*— *Pleading.*— *Cross Complaint.*— *Practice.*— Complaint to recover real estate, to which there was no answer, but a cross complaint averring facts which, if true, would defeat a recovery on the complaint; there was also an answer in avoidance of the cross complaint, but no reply. The record recited that "the cause being at issue, comes a jury," etc., and there was a verdict for the defendants, on the cross complaint, which took no notice of the complaint.

*Held,* that the complaint should, after verdict, be treated as if it had been denied, and that judgment for the plaintiff, for want of an answer or *non obstante veredicto,* should be refused.

*Held,* also, that the verdict must be regarded as for the defendants as well upon the complaint as upon the cross complaint.

SAME.—Informality of a verdict will not vitiate it, if upon reasonable intendment it can be seen that it covers the issues, but the court will disregard form, and make it serve. It will be avoided only from necessity originating in doubt of its import, or its manifest tendency to injustice,, or because the issues found are immaterial.

CONTRACT.—*Statute of Frauds.*—Where lands are to be conveyed to the vendee: upon his executing a written agreement to reconvey upon the performance of conditions, and he receives the deed without then executing the writing on his part, but engages to do so when he can get time to prepare it, which he never does, he can be compelled to perform it.

CONTINUANCE.—*Absent Witness.*—*Diligence.*—Where a cause has been long pending and once continued, an affidavit for a continuance for an absent witness, whose residence has all the time been unknown to the party,. and which, as to diligence, alleges only that "since the cause has been pending he has been making diligent enquiry as to the whereabouts of the witness," and that he has, only a few days before, learned that the witness resides in Kansas, but not the place of his residence, is insufficient, because of its failure to state specifically the facts showing diligence of enquiry.

BILL OF EXCEPTIONS.—*Motion for New Trial.*—Affidavits in support of a motion for a new trial were contained in the motion, but the bill of ex-

ceptions did not contain them, and had only this concerning them: "And filed in support of said motion the following affidavits (which have been inserted on page — of this record)."

*Held*, that the affidavits were not properly in the record.

From the Monroe Circuit Court.

*J. W. Buskirk, H. C. Duncan, J. B. Mulky* and *R. A. Fulk*, for appellants.

*R. W. Miers, J. H. Louden, J. R. East* and *W. H. East*, for appellees.

MORRIS, C.—The appellant John G. Chambers brought this suit against the appellees Hiram Butcher and John E. Butcher, to recover the possession of certain real estate, situate in Monroe county, Indiana. The complaint is in the usual form, alleging that the appellant is the owner in fee of the land in controversy; that the appellees hold, and have one year held, possession of the same without right; demanding judgment for possession and damages.

The appellees appeared to the action and filed a cross complaint in two paragraphs.

In the first paragraph they state that on the 31st day of July, 1871, they were the owners and in possession of said real estate, and that, at that time, Paris C. Dunning and Henry Ritter held by assignment a mortgage and judgment, which were liens on said land, amounting to about $1,700; that the appellees, being desirous of paying off said liens and not having the means with which to run and operate a mill situate on said premises, entered into an agreement with one John M. Stultz (who is made a defendant to the cross complaint), whereby they agreed to convey said real estate to the said Stultz in trust, to hold for them for the period of two years, and apply the income and profits of the said estate and the mill situate thereon to the repayment of the money advanced by said Stultz in assuming the payment of the said liens on said real estate; the appellees also agreed to bestow all their time in and about the running of said mill so as to insure to said Stultz as large profits therefrom as possible.

They also agreed to board the hands necessary to run said mill, said labor and boarding to be done and bestowed without any compensation other than by the payment of the liens on said real estate by the said Stultz; that it was also agreed, that if, from the rents and income of said mill, the said Stultz should not be repaid the money by him advanced, at the end of two years, he should nevertheless reconvey to the appellees said real estate, and the balance should be paid to him by sawing at fifty cents per 100 feet, he furnishing the logs; but, that if the profits of the property should exceed the amount due Stultz, he should pay over the excess to the appellees; it is also stated that Stultz was to execute to the appellees a writing at the time they were to deliver the deed to him for said real estate, containing the terms of said agreement and binding him to reconvey to the appellees as agreed; that said writing containing said contract and the conveyance were to be parts of the same transaction; that on the 31st day of July, 1871, the appellees made and tendered to said Stultz a warranty deed for said real estate, and demanded from him said written agreement; that Stultz, intending to cheat and defraud the appellees, falsely pretended that he was too much pressed with business to prepare said writing at the time, but promised that if they would deliver to him said deed, he would, in a few days, prepare, sign and deliver to them a writing containing the said contract; that, relying upon his promise and confiding in his honesty and integrity, they delivered said deed to said Stultz; that they had often, and from time to time, demanded said writing from said Stultz, but that he had, upon various pretexts, put them off and failed to execute to them the writing as agreed; that said Stultz paid off said liens, and that the appellees had done and performed all things on their part, by the terms of said contract, to be done and performed; that, with intent to cheat the appellees, the said Stultz fraudulently caused an execution to be issued on the judgment which he had assumed and paid, and caused said real estate to be levied upon and sold upon said execu-

tion to himself; that the appellees objected to and protested against said sale, but that the said Stultz assured them that it was to their interest that such sale should be made; that said Stultz continued to receive the rents and profits of said mill and real estate until they greatly exceeded the amount by him paid out in removing said liens, and that finally he absconded, in debt and insolvent, without having reconveyed said real estate to the appellees as agreed; that he was afterward, upon the application of his creditors duly declared a bankrupt, and one John Sherlock duly appointed his assignee in bankruptcy; that said assignee took possession of said real estate, and as such procured a deed for said land from the sheriff of Monroe county, pursuant to the sale made to Stultz; that the appellant has no other title to said real estate than such as he derived through a sale and conveyance of the same to him by said Sherlock as such assignee; that, at the time the appellant purchased, he had full notice of the rights of the appellees. They further state that, by reason of the absence of said Stultz, they have been unable to demand a reconveyance of said estate.

The second paragraph of the cross complaint is like the first, except that it is averred that the deed executed by the appellees to Stultz was given as security for the sum by him advanced to pay off said liens, and that it was, and was intended to be, a mortgage; that most of the sum advanced by Stultz, $1,000, had been paid off at the time he caused the real estate to be sold on said judgment; that the appellees had no knowledge of said sale, etc. In other respects, the second is the same as the first paragraph of the cross complaint. The relief asked is, that the appellees may be declared the owners of said real estate; that their title may be quieted, and for general relief.

The appellant Chambers answered the cross complaint in four paragraphs, the first being the general denial.

The second states, that the appellant derives his title from one Sherlock, who, as the assignee of said Stultz in bankruptcy,

sold and conveyed said real estate to him for a valuable consideration, without any knowledge on his part of the appellees' claim to said real estate.

The third states that the appellant Chambers is the owner of the real estate mentioned in the complaint. The facts in relation to the purchase of the real estate by Stultz on a judgment and decree of foreclosure, which were the first lien on said real estate, and amounting to more than its value, are stated. The absconding and bankruptcy of Stultz are also alleged. It is averred that said real estate was sold by Stultz's assignee in bankruptcy; that the assignee sold said real estate at public sale, giving due notice of the sale; that the appellees attended the sale, and made no objection to it, nor did they set up any claim to the property.

The fourth paragraph of the answer alleges that the appellant is the owner of said real estate, and had been such owner for five years. It states the manner in which he derived his title, and denies that he had, at the time he obtained his title, any notice or knowledge of any claim by the appellees.

There seems to have been no reply to the answer to the cross complaint, nor was there any answer to the complaint.

The record states that the cause, being at issue, was submitted to a jury for trial. The jury returned a general verdict on the cross complaint for the appellees, and their answers to the following interrogatories, propounded by the appellant:

"1. Did the defendant John E. Butcher, on the 1st day of July, 1871, own in fee simple, and did he have the paper title to, the lands mentioned and described in the complaint? Answer. Yes.

"2. Did the said John E. Butcher afterwards, on or about the 15th day of July, 1871, by deed convey the land described in the complaint and cross complaint to John M. Stultz? Answer. Yes.

"3. Did the defendants Hiram Butcher and John E. Butcher enter into a contract with said John M. Stultz to convey the lands described in the complaint and cross complaint, and to

work for the said John M. Stultz, in the mill situate on said land, and to board other hands who should work in said mill for said Stultz, and give said Stultz the rents and profits and proceeds of said mill for the term of two years from the execution of said deed to said lands, in consideration that said Stultz, at the end of said two years, should reconvey said lands, two-thirds to the said Hiram, and one-third to the said John E. Butcher, and was it further agreed that said Stultz should pay off and satisfy liens on said land to the amount of $1,700? Answer. Yes.

" 4. Was it further agreed in said contract, that each party should keep an accurate account of the work, board, rent and profits of said mill, and work to carry the same on during said two years, and if the work done and performed by the said Butchers should amount to more than $1,700, was the same to be paid to them by the said Stultz, and if said work, rent, board, and profits should amount to less than $1,700, were the said Butchers to pay the difference to said Stultz, by sawing lumber at fifty cents per hundred? Answer. Yes.

" 5. Was the contract, if any you find, made as specified in questions three and four? was such contract made in writing or was it verbal? Answer. Verbal.

" 6. In the contract made, if you find any was made, did the defendant Hiram Butcher, act for himself and also for the said John E. Butcher, and with the knowledge and consent of John E., in making said contract? Answer. Yes.

" 7. Have the defendants performed their part of said contract as specified in questions three and four? Answer. Yes.

" 8. Did John M. Stultz perform his part of said contract? Answer. No.

" 8½. Did the plaintiff John G. Chambers, at the time he purchased the land mentioned in the complaint, have notice that the defendants were claiming the land as their own, and that they intended to hold it? Answer. Yes.

" 9. Was the plaintiff present at the sale of the land in

VOL. 82.—33

controversy at Fairfax, when the same was sold by John Sherlock, as assignee in bankruptcy of said John M. Stultz? Answer. Yes.

" 10. Did the defendants, at said assignee's sale, give any notice that they intended to hold said lands as their own, and did they on that account forbid the sale of said land? Answer. Yes.

" 11. Was such notice so given sufficient to put a careful and prudent man upon inquiry as to the claim of these defendants to said land, when taken in connection with all the circumstances developed by the evidence in this case? Answer. Yes."

The jury also answered the following interrogatories propounded by the appellees:

" 1. What amount of liens did Stultz agree to pay and actually pay in consideration of the defendants' deed to him for this property by John E. Butcher? Answer. $1,700.

" 2. Has the said Stultz been fully paid or reimbursed the amount so paid, by the plaintiffs or either of them? Answer. Yes.

" 3. Did said Stultz agree at the time the deed was made to him, that he would hold the property and enjoy it for two years and would then reconvey it to the plaintiffs without any consideration? Answer. Yes.

" 4. If you find that Stultz made any agreement to reconvey, was such agreement absolute upon the expiration of two years and depending upon no other condition? Answer. Yes.

" 5. Did Chambers, at the time he purchased the real estate, have knowledge or notice of the terms of the agreement between Butcher and Stultz? Answer. Yes."

The appellant moved the court for judgment upon the special findings of the jury; this motion was overruled. He then moved for a *venire de novo.* This motion was also overruled. He moved for judgment notwithstanding the verdict, which was overruled. The appellant then moved for judgment for want of an answer to his complaint. This mo-

tion was overruled. The appellant then moved for a new trial, and this motion was also overruled and judgment rendered for the appellees.

The errors assigned call in question the rulings of the court upon the several motions made by the appellant.

We will consider these motions in the order in which they were made.

We think the court did not err in overruling the appellant's motion for judgment upon the verdict. The general verdict was a finding of the facts in favor of the appellees as alleged in their cross complaint. Assuming, as the appellant insists, that the finding was upon the first paragraph of the cross complaint, the general verdict must be held as establishing all the material facts alleged in it, and to entitle the appellees to judgment, unless the facts specially found are irreconcilably in conflict with the general verdict.

The appellant insists that the answer of the jury to the third interrogatory propounded by the appellees is inconsistent with the general verdict. The answer is, that Stultz agreed to reconvey the real estate in controversy without any consideration. Taking all the interrogatories and answers together, it is obvious that the jury intended to say by this answer, that he was to reconvey, without any consideration other than that specified in the agreement pursuant to which the appellees conveyed to him. The jury had, in answer to the third and fourth interrogatories propounded by the appellant, answered that in consideration of the use of the property, the labor of the appellees, and the boarding furnished by them, Stultz agreed to reconvey. These seemingly conflicting and contradictory answers may, and if possible should, be reconciled. If they can not be reconciled, they must neutralize each other, and can not control the general verdict. *Byram* v. *Galbraith*, 75 Ind. 134, 140.

The appellant says that the agreement of Stultz to reconvey can not be enforced, because it is stated in the cross complaint to have been verbal. But it is also alleged that Stultz,

at the time the contract was made, and at the time the deed was delivered, agreed and promised to reduce the contract to writing, but that he failed to do so. This, the general verdict found for the appellees; the special findings are silent upon the point. This contract could be enforced. *Butcher* v. *Stultz,* 60 Ind. 170; *Teague* v. *Fowler,* 56 Ind. 569.

The appellant also insists that the court erred· in overruling his motion for a *venire de novo,* because the verdict does not find upon the complaint, but only upon the cross complaint. The record contains no answer to the complaint, nor reply to the special paragraphs of the answer to the cross complaint. The record states, that " the cause being at issue, comes a jury," etc. As both parties went to trial without an answer to the complaint, and without objection, the complaint will be regarded as controverted without answer. *Taylor* v. *Short,* 40 Ind. 506; *Train* v. *Gridley,* 36 Ind. 241. The cross complaint, upon which the verdict finds, not only sets up the claim of the appellees to the land in controversy, but it states the title of the appellant to it, the manner in which it was derived, and from whom, and avers that the appellant had no other title. It may, and it should, we think, be regarded as an admission that the appellant was entitled to recover, unless he derived his title in the manner set forth in the cross complaint. It is the title of the appellant set forth in the cross complaint, which the appellees seek to avoid by proof of the facts alleged in the cross complaint. The proof of the facts alleged in the cross complaint would, necessarily, disprove the facts alleged in the appellant's complaint. It follows, therefore, that the finding of the jury upon the cross complaint, in favor of the appellees, was, by the clearest implication, a finding against the appellant upon the complaint. Substantially, therefore, the verdict covered the issues. Where the court can perceive that the substance of the issue is contained in the verdict, it will give validity to the verdict, however informal it may be, and, " In the language of Ch. J. HOBART,

'the court will work the verdict into form, and make it serve.' For verdicts are to have a reasonable intendment, and to receive a reasonable construction, and are not to be avoided unless from necessity, originating in doubt of their import, or immateriality of the issue found, or their manifest tendency to work injustice." 1 Graham & Wat. New Trials, 160. In this case there is no room for reasonable doubt as to the import of the verdict; the issue was material, and there is no apparent tendency to injustice. We think there was no error in overruling the motion for a *venire de novo.*

There was no error in overruling the appellant's motion for judgment, notwithstanding the verdict. The issues were tried and found for the appellees.

Nor, if, as we have held, the complaint was to be deemed controverted, though not answered, did the court err in overruling the appellant's motion for judgment on the complaint for want of an answer.

It is also claimed that the court erred in overruling the motion for a new trial. When the case was called for trial, the appellant moved for a continuance upon his own affidavit that one John M. Stultz was an important and material witness for him, without whose testimony he could not safely proceed to the trial of the cause. The facts which appellant expected to prove by Stultz are stated; they are material to the issues. The appellant states that he believes the facts to be true. It is stated that the absent witness resides in the State of Kansas, but that the affiant does not know in what locality; that the witness left Indiana in 1872; that affiant has, since this cause has been pending, been making diligent inquiry to learn the whereabouts of said witness; that since his absence from the State in 1872, his residence has been all the time unknown to affiant; that he first learned of his whereabouts on the previous Saturday evening; that he can secure the testimony of the witness by the next term of court, etc. The only question upon the application for a continuance

is, does it show proper diligence on the part of the appellant? The affidavit does not state what enquiries were made, but that they related to the whereabouts of the witness; it does not show when the enquiries were made nor of whom, whether of persons likely to know his whereabouts or not. We think the affidavit fails to show proper diligence to procure the testimony of Stultz. The cause had been pending for a considerable time; had been continued over one term. The facts constituting due diligence should have been specifically stated. *McKinlay* v. *Shank*, 24 Ind. 258; *Wolcott* v. *Mack*, 53 Ind. 269; *Ohio, etc., R. W. Co.* v. *Dickerson*, 59 Ind. 317.

The appellant filed with his motion for a new trial affidavits showing that one of the jurors was related by marriage to one of the appellees, the juror's wife's mother being the cousin of Hiram Butcher. The affidavits are in the record as a part of the motion for a new trial, but are not in the bill of exceptions, and are not alluded to therein otherwise than as follows: "And filed in support of said motion the following affidavits (which have been inserted on page —— of this record)." The affidavits, thus referred to, could only be made a part of the record by bill of exceptions; if not in the bill of exceptions, they can not be considered as a part of the record. The question as to the incompetency of the juror is not, therefore, properly before us.

The other causes stated for a new trial are not discussed in the appellant's brief, and must be considered as waived.

We have considered all the questions discussed in the appellant's brief, and conclude that there is no error in the record.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be in all things affirmed, at the costs of the appellant.