Ranney, J.
.The plaintiffs in error, were sued in the court below, in an action on the case, for diverting a water-course, called the west fork of the Little Beaver. They pleaded not guilty, and upon trial a verdict was found against them, upon which the court rendered a judgment. They prayed certain instructions from the court to the jury, which being refused, they excepted, and now present the same questions to this court, upon this writ of error. The object of the controversy is, to determine to which, of two tracts of land a certain water-right attaches. . Leaving out of the question such details as tend only to confuse, a clear understanding of the points raised.and decided will be obtained from the following state of facts : On February 27, 1834, Thomas Pollock conveyed, by deed of that date, to Joseph McLaughlin 15.10 acres of land, lying on one side of said stream, by particular description. On July 31, 1837, John May, who owned lands above those thus conveyed, on both sides of the stream, and also on the opposite side of the stream against them, conveyed to McLaughlin ohe-acre of land, upon the opposite side of the stream, extending as far up the stream as the land conveyed by Pollock to McLaughlin, and also the right to build a mill-dam along the whole length of the upper line of the tract, so as to raise the water to a certain mark, particularly specified, and to have the right, at ail times, to enter'upon the lands of May to keep the same in repair.
*346 *A dam was accordingly erected, from which the water, by means of a race, was taken out upon the 15.10 acre tract, and after being carried through the whole length of that tract, was again discharged into the stream at a considerable distance below the lower boundary of the one-acre tract. On this race, and supplied by water from it, was a mill, which the bill of exceptions informs us was first erected in 1829, and until 1837 supplied with water from the same race, taken from a dam built some rods further uj> the stream than the present one, but under what authority does not appear. Since 1837, the mill has been propelled by water taken from the dam built in pursuance of the deed from May to McLaughlin, before referred to. On August 10, 1837, McLaughlin conveyed to May three acres from the upper end of the 15.10 acre tract, reserving the right to keep up the dam on the north side. It is not important further to notice this conveyance. At the April term of the court of common picas for Columbiana county, for the year 1845, Andrew McCormick recovered a judgment against McLaughlin, upon which, on September 15, 1845, the 15.10 acre tract was levied upon, and in the levy particularly described by metes and bounds, as in the deed from Pollock to McLaughlin. At the sale, the plaintiffs in error became the purchasers, and received a deed from the sheriff, dated March 20, 1846, which, after setting forth the levy, sale, and confirmation, proceeds to convey the land so specifically described, “with all and singular the privileges and appurtenances thereunto belonging.” This is the plaintiff’s title.
On July 3, 1845, McLaughlin mortgaged both these tracts, together with other lands, to Henry Mason, the defendant. The mortgage money being unpaid, at the March term, 1846, of the same court, he obtained a decree for the sale of all the lands specified in his mortgage, except the 15.10 acre tract which had been already sold on the prior lien, as before stated, and at the sale he became the purchaser of the one-acre tract, and received a deed from the proper officer, on August 1, 1846. This constitutes the defendant’s title.
*Upon this state of facts, the court of common pleas charged the jury, that, while the judgment would operate as a lien upon the appurtenant water-right, by which the water was obtained to propel the mill, yet that such water-right, upon a tract of land other than that upon which the mill was situate, *347 though subject to levy and execution, would not pass to the purchaser, at sheriff’s sale, unless the same was included expressly in the levy. If not so expressly included, the land only within the boundaries specified, and the mill thereon, would pass to the purchaser at the sale.
Was this instruction correct? is the only question presented for our consideration. We do not attach any importance to the fact that the sheriff, in his deed, has professed to convey the lands, with the privileges and appurtenances thereunto belonging. The extent and operation of his deed must be measured by the levy that he made, and the appraisement and sale consequent thereon, and can not be enlarged by any expressions that he may have made use of in his deed. Without a judgment, levy, and sale, the sheriff possesses no more power or authority to convey the lands of a debtor, than any private person; and, consequently, without these indispensable requisites, can give no better title to them. Any interest, not levied upon, can not be legally sold, and, if not legally sold, can not be conveyed. Of this we think there can be no doubt.
The great question here is, what was included in the levy? That the land, with every substantial erection thereon, including, of course, the mill, was covered by it, is not denied. To include all these, there was no necessity or propriety in going further than to give a description of the land by metes and bounds.
The absolute title to all these was carried to the purchaser by the sale and conveyance. A principal thing will draw to it all its incidents and appurtenances, and upon a transfer of the principal thing, they will pass with it, although not specifically named. This results, inevitably, from the nature and character of the principal and its incidents, and the relation they ^sustain to each other.(1) The land and the mill having passed to the plaintiffs in error, by the sheriff’s deed, as the principal thing; can the water-right, which now constitutes the matter in controversy, be regarded as an incident appendant to that principal, and *348 so carried along with, it? That land can not be appurtenant to land, as a general rule, is well settled.
The right, here claimed, of raising a water-power upon one piece of land to be used and enjoyed upon another, comes under the general term—easement.
A late learned writer (Angell on Water-courses, see. 142) informs us that they were treated of by the civil law under the name of services, where they were divided into real and personal. The former were defined to be “ a service which one estate owes to another; or the right of doing something, or of having a privilege in one man’s estate for the advantage and convenience of the owner of another estate.” “The estate unto which the service is due, is called prcedium dominans, or the ruling estate, and tho other estate which suffers or yields tho service, is called prcedium serviens, or an estate subject to a privilege or service. To constitute such service, it is therefore necessary that there be two estates, the one giving and tho other receiving the advantage.”
The extract I have quoted exactly defines the interest claimed by the plaintiffs in error as belonging to the estate of the purchaser. As they claim it, it is the right of erecting a dam and flowing back the water upon the estate of May, for the advantage and convenience of the estate they purchased, on which the mill was situate. That McLaughlin bought this right or easement of May, for the advantage of the mill on the 15.10 acre tract, can not be doubted. That he so applied it and used it down to the time that that tract was sold to the plaintiffs *in error, is equally clear. That he did not buy it or use it for the benefit of the one-acre tract is undeniable.
It is true that it was acquired by the same deed by which the one acre-tract was, and that the whole was mortgaged to Mason by the same description found in the deed from May. But at the time the judgment was obtained, both tracts, as well as the easement, belonged, unincumbered, to McLaughlin, and the easement had been made subservient, and attached to the 15.10 acre tract. If, at that time, it attaches as an incident to that estate, the same judgment that bound that estate bound its incident also. That it did so attach, as an incident or appurtenance, to the fifteen acre tract, and passed with it without any special description in the levy or deed, I think very clear from the authorities.
The same author from whom I have already quoted (p. 164, sec. *349 158), upon the authority of a great number of English and American cases, lays down the general rule thus : “ The maxim of the-law is, that whoever grants a thing is supposed also tacitly to grant that without which the grant would be of no effect; and accordingly, whenever anything is granted, all the means to attain it, and all the fruits and effects of it, are granted also, and will, pass inclusive, together with the thing, by the grant of the thing itself»without the words cum pertinentiis, or with 1 appurtenances,’ or any like words.”
The following cases will illustrate the application of this rule under a variety of circumstances. It is true that in some of them stress is laid upon the fact that the term appurtenances was found in the deed, but it will be seen that the weight of authority fully sustains Mr. Angelí in saying that that, or any similar word, is-not necessary.
The direct question as to the necessity of any such provision was made in Kent v. Waite, 10 Pick. 141. The court say: “It is admitted that the plaintiff has a valid title to -the wood-lot, but it is denied that he has any title to the right of way, because in some of his title-deeds there is no.express grant of the right of way, nor of the appurtenances of the *wood-lot. But this omission is not material; for the principle seems to be well settled, that a right of way or other easement appurtenant to land, will pass by a grant of the land, without any mention being made of the easement or the appurtenances. This principle is laid down by Lord Coke; and is supported by a strong current of authorities. There is a dictum to the contrary in the case of Higgins v. Grant, Cro. Eliz. 18, but it is wholly unsupported.”
Justice Story, in the case of the United States v. Appleton, 3 Sumn. 502, is equally explicit upon this point. Referring to the case of Staples v. Hayden, 6 Mod. I., he says: “ It is observable, that in this case reliance is placed on t'he language of the grant, ‘with all the ways,’ etc. But this is wholly unnecessary, for whatever are properly incidents aDd appurtenances of the grant will pass without the word ‘ appurtenances,’ by mere operation of law. So it is laid down by Lord Coke in Co. Lit. 307. The same doctrine is affirmed by Lord Chief Baron Comyn (Dig., Grant, E. 11), and it has been fully supported by the Supreme Court of Massachusetts in a very recent case.” The Supreme Court of Pennsylvania have, in effect, adopted the same rule.
*350 In Swartz v. Swartz, 4 Barr, 359, Gibson, C. J., says: “ Though the rulo admits of exceptions, it is generally true that land can not be appurtenant to land; but that a license or privilege may, was ruled in Pickering v. Staples, 5 Serg. & R. 107, in which a water-right was allowed to pass .without the word ‘privileges,’ as appurtenant to a saw-mill. The privileges in this case as well as in that was enjoyed in connection with the land which was the subject of the conveyance—it would have been useless separated from it—and it is not to be doubted that it passed by the word * appurtenances.’ ”
By the very recent case of Hinckliff v. Earl of Kinmoul, 5 Bing. (N. C.) 1, it appears to be the settled modern doctrine in England. The question there was whether a right of way claimed to be incident to an estate, could be maintained under a lease that did not contain the word “ appurtenances.” *Tindal, C. J., says: “We are of opinion that upon the facts found in this special verdict, such a right did pass as a necessary incident to the subject matter actually demised, although not specially named in the lease.”
I think these cases conclusively settle that incidents and appurtenances to property will pass upon its alienation without being named. What can bo regarded as such, and when they arise, is also made very clearly to appear by the adjudged cases.
In the case of Hazard v. Robinson, 3 Mason, 279, Justice Story lays down the following general rule: “ Whatever is actually enjoyed with the thing granted, as a beneficial privilege at the time of the grant, passes as parcel of it; but not otherwise.”
The same learned judge considered the subject very fully in the case of the United States v. Appleton, before cited. The question in that case arose upon the claim of the defendant to the use of a door and piazza as a passage to the street, the same being enjoyed at the time he purchased the property.
The following extracts from the opinion will show the view of the law taken by the judge, and the ground upon which his decision was based: “ The general rule of law is, that when a house or store is conveyed by the owner thereof, everything belonging to, and in use for, the house or store, as an incident or appurtenance, passes by the grant. It is implied from the nature of the grant, unless it contains some restrictions, that the grantee shall possess the house in the manner, and with the same beneficial *351 rights as were then in nse and belonged to it. Thus, if a man sells a mill, which, at the time has a particular stream of water flowing to it, the right to the water passes as an appurtenance, although the grantor was, at the time of the grant, the owner of all the stream above and below the mill. The law gives a reasonable intendment in all such cases to the grant; and passes with, the property all those easements and privileges which at the time belong to it, and are in use as the appurtenances. In truth, every grant of a thing ^naturally and necessarily imparts a grant of it as it actually exists, unless the contrary is provided for.”
In the case of New Ipswich Factory v. Batchelder, 3 N. H. 190, it was held that where a grantor deeded a piece of land by metes and bounds with a mill upon it, and at the time there was a raceway running beyond the bounds of the lands granted, into other land of the grantor, to carry the water off which was necessary to the convenient use of the mill, that the right to have the water flow off uninterruptedly through the whole extent of the raceway, passed as appurtenant to the mill. The court remark that, “ It is well known that in the convevancebf real estate some things have always been held to pass as incidents t<3 other things,” and that “ a raceway may be as necessary an appurtenance to a mill, to conduct the water from it, as a canal to conduct to it the water necessary to work it. In many cases a severance of the appurtenance from the thing to which it is appurtenant would render both useless.”
In Kilgour v. Ashcom, 5 Har. & Johns. 82, it was held that when K. died intestate, seized of a tract of land on which there was a grist mill, then in operation, on a division of the land, under the act to direct descents among his heirs, the mill was on the part allotted to his son John, the dam of which covered a portion of the part allotted to his daughter Mary, John had a right to use the mill and dam in the same way, and to the same extent, as they had been used by K. in his lifetime.
In Blake v. Clark, 6 Greenl. 436, it was held that, “ by the conveyance of a mill eo nomine, no other land passes in fee, except the land under the mill and its overhanging projections. But the term ‘mill ’ may include the free use of the head of water existing at the time of its conveyance, or any other'easement which has been made with it, and which is necessary to its enjoyment.”
*352 The right to overflow other lands of the grantor, outside of the boundaries of the grant, involving the same general *principle, was most positively affirmed by the Supreme Court of New York, in Oakley v. Stanley, 5 Wend. 525. Sutherland, J., says; “Caldwell intended to sell and Hatch intended to buy a valuable water-privilege, for which a large consideration was paid. The right to overflow the adjoining premises of the grantor to the extent necessary to the profitable enjoyment of the privilege purchased, and in the manner in which it existed and had been used previous to the grant, passed to the grantee as necessarily appurtenant to the promises conveyed.”
In the light of these authorities, as well as many more that might be referred to, we are very cioar in the opinion that this easement created in the estate of May, by his deed to McLaughlin, was by the owner attached as an incident to, and became a part of the fifteen 10-100 acre tract upon which the mill was situate, and that it passed by a conveyance of that tract, just as necessarily and inevitably, as the buildings and fences upon it; and that to effect such transfer, there was no more need of expressly naming the one than the other.
The lien of the judgment covered the land with all its incidents and appurtenances as then used and enjoyed, and the sale of the land carried them all to the plaintiffs in error. The judgment debtor, after the lien of the judgment attached, could not have separated the incident from its principal; nor could the sheriff work such separation in his sale. They together constituted one indivisible whole, the whole of which the lien covered, and the sale transferred.
A different doctrine might be ruinous to either debtor or creditor. If the debtor could separate the appurtenance, ho might destroy the principal part of the security of the creditor, and if the-creditor, through the sheriff, could do it, he might sacrifice the property of the debtor; since in either case, valuable mill property would be comparatively valueless without the appurtenance thus attached. The plaintiffs in this case did not expect to buy a mill without water-power to drive it, and we hold they did not.
*It follows, from these views, that the court of common pleas erred in instructing the jury, that the benefit of this appurtenance *353 would not pass to tlie purchaser, unless expressly named in the levy, and for this error the judgment is reversed, and the cause remanded for further proceedings.
Hitchcock, C. J., was absent.

 Aceessorium non ducit, sed sequitur seeum principale. (Jo. Lit. 152, a. The incident shall pass by the grant of the principal, but not the principal by the grant of the incident. See also 11 Rep. 52. Whoever grants a thing is supposed also tacitly to grant that without which the grant itself would be of no effect. Broom’s Legal Maxims, 198.