Johnson, J.
1. Was-there a good service on Mrs. Elliott ? The return shows the service of two copies by leaving at each of the defendants usual place of residence a certified copy, etc.
Whether these defendants had separate places of residence, or the same place, the fair and reasonable interpretation of the return is, that each was served with a copy as required by the statute.
2. As to the power of the court to¡ correct a mistake of a former term and to make a nunc pro tunc order.
The motion to confirm the sale, made at the April term, had in fact been sustained and the sale confirmed. The motion to set the sale aside had in fact been overruled. *206 Mrs. Elliott’s attorney was present defending against the former motion and prosecuting to the latter, and excepted to the action of the court on both motions.
By an error of the judge in noting his action on these motions, the. motion to confirm was noted on the court docket, “ motion overruled, defendant excepts,” and the! motion to set the sale aside was noted, “ motion allowed, defendant excepts.”
These exceptions by defendant show that the oral announcement by the court of its action were just the reverse of those noted on the judge’s minutes, or at least that the defendant’s counsel so understood them.
The defendant offered these minutes in evidence in her behalf, and can not now object to their competency, if they tend to prove that there was a mistake. In addition to the significance of these exceptions, noted in the minutes, the bill of exceptions shows that the court heard the unsworn statements of counsel, and all this evidence, and upon the knowledge and recollection of the judge who presided at the hearing of the former motions, as well as upon the hearing of this, found that the journal entry was a mistake, and made the order complained of, as of the former term. No objection was made to the court hearing unsworn statements of counsel at the hearing of this motion. A witness is competent to give evidence without being sworn, if the parties consent or waive the administration of the oath, as urns done in this case. Neither urns it error for the judge to act upon his own recollection of the facts, in connection with other like evidence tending to show the mistake in a case like this, wlfere there was no evidence other than the journal entry to show there was no mistake. Upon all the evidence in the case the court did not err in finding that there was a mistake, and in making a nunc pro tunc order confirming the sale.
It is claimed however, that this was not a “mistake, neglect, or omission, of the clerk, or irregularity in obtaining a judgment or order,” within the meaning of section 5354 Revised Statutes. In the first instance it was the *207 mistake of the judge in making these notes on his minutes differing from the judgment the court had officially announced. The clerk, by following these minutes, instead of the judgment actually announced, adopted that mistake, and it became in fact and in law a mistake of the clerk as well as of the judge. It was a mistake made by both within the meaning of the statute. How the clerk was induced to enter a mistaken entry upon the journal is immaterial, if the entry was in fact a mistake.
3. Did the court err inhot allowing Mrs: Elliott’s de-. mand for a homestead, or rather in not setting aside the sale because the sheriff' had refused to allow and set one off to her ?
We think not. As she did not sign the mortgage, she was not precluded from making the demand of a homestead, if it was her home at the time.
The evidence shows that at the time of the sale she and her husband were not living together as man and wife; that shortly prior thereto she had taken her three minor children and gone to her father’s in the eastern part of the state, leaving her husband aud several minor children by a former marriage residing on the premises, and this state of separation continued when this motioii was heard, but whether this residence with her father was temporary or permanent did not appear.
Upon this state of facts, agreed upon by the parties, the motion to allow a homestead was overruled, and we think correctly.
It was admitted that Mrs. Elliott had left her home before demand and gone to a distant part of the state, and was not living on the premises with her husband as his wife at the time of sale, and continued to and was residing away for more than three months, having her owd children with her, and leaving her husband and his children by a former marriage residing in the homestead.
In this state of the case the burden was upon her to show that her removal was only temporary, with intention of returning.
*208 In the absence of such proof, the admission that she was not living with her husband as his wife raises a presumption that was sufficient to warrant the court in finding against her until that presumption was removed.
4. Did the court err in ordering a sale of the land free of Mrs. Elliott’s inchoate right of dower ?
Elliott exchanged lot No. 49 for lot No. 2.
The terms of the exchange were-that Mrs. Plattor was to pay $300, and convey to Elliott lot No. 2 by warranty deed, and in consideration or payment Elliott was to convey to her lot No. 49, and pay off certain mortgage liens thereon.
Accordingly, Mrs. Plattor paid the $300, and conveyed to Elliott by deed of general warranty lot No. 2, aud put him in possession, and Elliott by like deed conveyed to her-lot No. 49, and executed a mortgage.on lot No. 2, binding himselfito lift certain mortgages on lot No. 49, and save her harmless therefrom. He failed to do this, and she was compelled to discharge these liens to save the property she had purchased. These conveyances were all part of the same transaction.
The conveyance of lot No. 49 and the payment and discharge of the liens thereon, were the agreed equivalent for the comuyance of lot No. 2 and the payment of $300.
Mrs. Plattor paid $300, and conveyed in fee lot No. 2, and took the title to lot No. 49 and a covenant from Elliott to pay off the liens thereon. A failure to perform this covenant was a failure to that extent, to pay the agreed equivalent or purchase price of land conveyed to the vendee.
The taking of the mortgage to secure this covenant was not the waiver of the vendor’s lien, if one existed.
It being a covenant to pay off these liens, as part of the consideration for the land deeded to him, it was a part of the purchase-money agreed to be paid in exchange of lands. In equity it was as much so as if he had agreed to pay that amount to his vendor directly, with which to pay off these liens.
The vendor’s lien is based upon the theory that it would be unconscionable that the vendee should hold the land *209 and no+ pay for it, and therefore, as between vendor and vendee, the latter in equity holds the title, under a trust to pay what he had agreed as the price or purchase-money.
Unless the vendor has shown an intention by taking other security, equity will presume that the vendee holds the lands in trust to pay what he agreed to pay.
The mere giving of a bond, note, or covenant for the purchase-money will not discharge an equitable lien; yet, where other security is substituted for the consideration, and was, in fact, the thing bargained for, the lien is lost. 1 Lead. Cases in Eq. 319; McKillip v. McKillip, 8 Barb. 552.
Here, however, there was no substituted security. The mortgage on the same land was not a waiver of the vendor’s lien, nor was it taken in discharge of it.
D., X. & B. R. R. Co. v. Lewton, 20 Ohio St. 401, is directly in point. There L. granted a right of way to the railroad company, and in consideration, the latter was to pay $1,500 at á future day, and to construct certain crossings and cattle-guards upon L.’s land.
The company took possession and constructed its road. It was held, that L. had an equitable lien upon the property sold, as well for the damages for not constructing its road as agreed as for the purchase-money.
This court says (20 Ohio St. 411): “The judgment for damages for not constructing the road in the manner provided for in the contract, is as much the price of the interest sold to the railroad company, as was the $1,500 agreed to be paid in money. The only difference is that the amount of cash was ascertained and agreed upon by the parties,, while the amount of the damages was not ascertained until judgment. Both sums arose on contract, and constituted the • compensation the vendee was to return to the vendor for the interest purchased.”
So here,Elliott agreed in part payment to convey certain land, and in full payment to pay off’ certain liens thereon, known to the parties This amount was as much part of the compensation to be paid as if the promise had been to *210 pay the vendor, as part of the purchase-money, a sum equal in amount to such liens.
The taking of a mortgage on the land conveyed to Elliott was not a substituted security, nor does it disclose any intention to waive the vendor’s lien.

Judgment affirmed.