Cherrington, J.
This action is one seeking the specific performance of a contract entered into between the plaintiffs and The Dayton &• South-Eastern Railroad Company, by the terms of which the Railroad Company, among other things, agreed to maintain a water-way in and through a certain canal bed running from the western to' the eastern boundary of plaintiffs’ farm, and claiming damages sustained on account of the breach of the same.
It appears from the petition that the plaintiffs, being the owners of a valuable farm through which the railroad compány desired to locate its track, in 1875 entered into a written agreement with the Dayton & South-Easterm Railroad Company, whereby they granted to said company, its successors *32 and assigns, a rigbt-of-way for its railroad track over their land on a line by and along what is known as “ The Old Hydraulic Canal,” in consideration of which said company, for itself, its successors and assigns, agreed “ to carry all the water that falls upon said land, or descends over the same in runs and ravines, north of the line of said railroad, along the north side of said railroad as surveyed, and in the bed of said “ Old Hydraulic Canal,” eastwardly to the eastern side of said land, and discharge it into Paint creek at a point where the said Lavina R. and Hugh Bell had before that time been discharging it ; and not to permit or allow any of said water to break over, or through, the south bank of said old canal, or to run over or through its said track and embankment, upon the said bottom lands, as long as it, or its successors and assigns maintained said railroad.” That in pursuance of said contract, the railroad company entered upon and constructed its track over said lands, completing the same in 1879; that it and its successors have ever since maintained and operated the said railroad over and along said track; that in 1881 all the property of The Dayton & South-Eastern Railroad Company, by process of consolidation, became vested in the Toledo, Cincinnati & St. Louis Railroad Company, whose property, in 1884, was sold at judicial sale, and defendant became the purchaser of all that part known as the Dayton & South-Eastern division, which included the right of way and track through plaintiffs’ land. That it has failed to maintain said water-way so as to carry off the water flowing into the same, but has permitted it to become filled up and obstructed in places, so that in May, 1885, the water broke over and through the south bank of said canal, in one place making and leaving a large breach, through which, at the time of every rain fall, large quantities of water have been carried down and over their bottom land, depositing thereon large quantities of sand, gravel and debris of various kinds, greatly injuring the land and crops growing thereon; that defendant intends to permit said breach to remain continually open that the water may run through it down on to their bottom lands, which will result in irreparable damage to the same.
*33 The answer- contains three defenses, the first and third of which, after admitting the location of the track, the purchase of the Dayton & South-Eastern division of the road, and its operationof the same, amount in substance to a denial of the other material averments of the petition, and contain the further averments, that any damages that plaintiffs’ land may have sustained, were the result of the negligence of the former owners of the road — and that it is wholly impracticable to maintain said water-way as provided for in said pretended contract. The second defense, in effect, is, that the contract was not recorded in the recorder’s office of any of the counties through which the railroad passes; that at the time of its purchase at judicial sale, it had no actual notice of the existence of said contract, and is not in any way bound by its provisions.
To this defense a demurrer is interposed, which will be sustained. Defendant’s ignorance of the existence of the contract, at the time of its purchase, will not absolve it from the obligations it imposed on the original parties to it. By the purchase, the defendant acquired all the rights and privileges of the former owners of the road in and to the right-of-way through plaintiffs’ premises, and likewise assumed all the obligations and duties required of them in procuring the same. 5 Wait’s Actions and Defenses, 816; Waterman on Specific Performance, sec. 77.
The testimony establishes clearly, that the agreement of the railroad company to maintain the water-way, was the main feature of the contract inducing plaintiffs to enter into ■it and grant the right-of-way; that said water-way had been . maintained, substantially as required by the provisions of this contract, for more than forty years by the plaintiffs and former owners, and that it can now be successfully maintained, though attended with considerable expense, and without involving the exercise of cultivated judgment or any special skill other than that of an ordinary civil engineer. That the defendant has neglected to keep the bed of the canal clean, but has permitted it to become filled up with rubbish so as to prevent the unobstructed flow of the water through it. That in May, 1885, during a hard rain, the embankment on the *34 south side of the canal gave way in one place, and the water ran through and caused a breach in the embankment through which the water, at the time of every rain, has run, and continues to run, down over the bottom lands of plaintiffs, and) renders a portion of them almost valueless; that plaintiffs have not a complete remedy at law.
Are the plaintiffs entitled to a decree for specific performance of the contract on the proofs made ? If not, their remedy is at least an imperfect one, though the proof of their case made in the petition seems to be complete.
The defendant, by its counsel, insists that the decree should be refused, and it will be readily conceded that the question is one not without difficulty.
The Port Clinton Railroad Co. v. Cleveland & Toledo Railroad Co., 12 Ohio St. 554, cited by counsel, was a suit for specific performance of a covenant to operate and manage a railroad, and while the judge rendering the opinion, gives forcible reasons why performance of such contracts should not, in general, be decreed, yet the case does not hold but that performance-might be enforced in a proper case; and relief was refused for the reason that the party had no such standing in the court as justified it in calling on the court for aid. The judge said,, page 559:Under the arrangement then made, the Port Clinton company may still exist as a legal entity, but we do not think it has any such standing in court, or any such interest, as will support its claim for relief.”
In the case of Rutland Marble Co. v. William Y. Ripley et al., 10 Wall. 339, Ripley, by cross bill, asked for specific performance of a contract “ to quarry marble from the marble quarry, and draw and deliver at the mill of said Ripley in Rutland, from the layers of marble usually denominated the white layers, all the marble that said Ripley might want to saw, manufacture, and sell, in good sound blocks of suitable size, shape and proportion, and to quarry to order as might be wanted to keep the mill fully supplied at all times, the amount to be not less than 75,000 feet per annum, and for so long a time as the said Ripley, his heirs, executors, administrators and assigns might want,” and his. prayer was denied on several different grounds, any one of which was sufficient to justify the court *35 in refusing relief aside from the one resting on the impracticability of performance, where the court say: “ another serious objection to a decree for a specific performance is found in the peculiar character of the contract itself, and in the duties which it requires of the owners of the quarries. These duties are continuous. They involve skill, personal, labor and cultivated judgment. It is, in effect, a personal contract to deliver marble of certain kinds, and in blocks of a kind, and the court is incapable of determining whether they accord with the contract or not. The agreement being for a perpetual supply of marble, no decree the court can make will end the controversy. If performance be decreed, the case must remain in court for ever, and the court to the end of time may be called upon to determine, not only whether the prescribed quantity of marble has been delivered, but whether every block was from the right place; whether it was sawed; whether it was of suitable size, or shape, or proportion.' Meanwhile the parties may be constantly changing. The Marble Company are liable so long as they hold the land, and Ripley’s rights exist only while he holds the mill. It is manifest that the court can not superintend the execution of such a-decree. It is quite impracticable.”
In the character of the contract in question there is nothing peculiar. We have found from the evidence, that its execution will not involve the exercise of skill or cultivated judgment; all things to be done are provided for and defined in the contract itself; nothing is left undetermined; we see nothing in the provisions of the contract that in its compulsory performance will require the case to be kept in court “ forever.”
Other cases have been cited to the same purport as above.
The cases, so far as we have examined them, where specific performance has been refused by reason of the impracticability of performance, are cases involving contracts which do not define all things to be done, but leave something to the judgment and discretion of the one or the other of the parties, and those involving continuous personal labor, skill and judgment; and in this class of cases, as we understand it, aid is're *36 fused because their peformance would require continuous judicial superintendence, which would be impracticable."
L. T. Neal and Geo. B. Bitzer, for plaintiffs.
John G. Entrekin, for defendant.
Courts of equity have repeatedly decreed specific performance of contracts with land-owners in regard to farm crossings, cattle-guards and fences. 1 Redfield on Railways, 224, sec. 62; 2 Id. 341, sec. 313; 2 Rorer on Railroads, 1457 ; 20 Ohio St. 401.
“ In general, wherever, from the nature of the relief sought, performance of a contract in specie will alone answer the ends of justice, equity will decree specific performance.’’ 5 Wait’s Actions and Defenses, 763; Shinner v. Morris Canal & Banking Company and others, 27 N. J. Eq. 364; Stuyvesant v. The Mayor, Aldermen, etc., of New York, 11 Page, 414.
The plaintiffs have not a complete remedy at law. The entire justice of the case is with them. The execution of the contract is practicable, and in our opinion, its specific performance enforcible. A decree in accordance with this view will be granted, together with a judgment for $350, which we find to be the damage done to the crops and land.
(Bradbury, J., does not concur in granting the decree, for the reason that in his opinion it will be inoperative.)