Williams, J.
The issues of fact were found by the court of common pleas in favor of the plaintiff. No bill of exceptions was taken, nor was there any finding of facts by that court. The only question therefore before the circuit court, was whether the pleadings were sufficient to sustain the judgment ; and that is the only question here. The contention of the defendant is, that the petition does not state any right in the plaintiff to the way in controversy, and, if it does, then that no violation of the right is shown, of which equity will take cognizance.
*538 1. In respect to the right of the plaintiff to the way, it appears that the person from whom the parties derive title to their lands, owned in connection therewith, other lands, which together constituted one tract. When he subdivided the tract, and sold the parcels now belonging to the plaintiff, and the defendant, and other parcels of the subdivision, he opened and constructed the way in question, “.for the purpose of affording means of access to the several tracts sold, for the benefit of the grantees', their heirs and assigns, and of all persons wishing to travel the same to reach the landand also, to enable him to get to and from those portions of the land retained by him. Ever since, and during a period of twenty-five years next preceding the commencement of the action, the way so laid out and constructed, has been “ used, traveled over, and occupied for the purpose of reaching the several pieces of land, with the assent, acquiescence, and agreement of the grantor, and his several grantees and their assigns,” to whom the premises, over which the way ran, were conveyed. The respective owner’s of the lands on which the way was located, “ for the purpose of settling definitely its width and exact location, mutually agreed between and among themselves that the way should be thirty feet wide, its entire length ;” and thereupon, by virtue of the agreement, they built their fences so as to leave the way open as agreed upon, and thereafter constructed ditches and bridges, and otherwise improved it as a roadway. While the way was so opened, improved, and in actual use, the plaintiff, by purchase from one of the parties to the agreement alluded to, became the owner of one of the tracts of land embraced in the agreement, and the defendant purchased another of the parcels over which the way was so located, opened and used, from a proprietor who was also party to the agreement. It further appears, that the defendant purchased with knowledge of the existence of the way; and of the agreement made by his vendor with the other proprietors, and, that he bought his parcel “ subject to the perpetual right of the plaintiff and the several owners of the other tracts, their heirs, and assigns, to use, enjoy, occupy and travel over the way, its entire length, with wagons, vehicles and other conveyances.”
*539 There can be but little doubt that the way, as originally established by the owner of the entire tract for the benefit of the parcels conveyed by him to purchasers, became an easement appurtenant to the lands granted, and not merely personal to the grantees. It was established for the beneficial use and enjoyment of the premises conveyed, and, was a burden imposed upon each parcel for the more complete and convenient use of the others. Each parcel, for the purposes of the way ■over it, became servient to the others, and they, in turn, were subject to a like servitude for its benefit.
The exact location a nil width of the way, so made appurtenant to their lands, were definitely settled by the mutual agreement of the owners, who placed their fences to the lines agreed upon, and thereafter improved and used it without objection. Such was the condition of the way when the plaintiff and defendant purchased their lands, and such, it continued to be, down to the time of its threatened interruption by the defendant. It was then, not simply a way of necessity, limited in duration by the necessity which originally gave rise to it, but became permanently appurtenant to the principal estates; and, under the well settled rule, each purchaser took his land with all the rights his grantor had with respect to it, and burdened with the servitudes he imposed upon it. As was said by Mr. Justice Story in Hazzard v. Robinson, 3 Mason, 279, “Whatever is actually enjoyed with the thing granted, as a beneficial privilege at the time of the grant, passes as parcel of it.” A way is'appendant or •appurtenant to other lands, when it is granted for the convenience of their occupation without respect to the ownership or number of occupants. In such case, the right-of-way passes with the dominant estate as au incident thereto. Boatman v. Lasley, 23 Ohio St. 614. “ Where an easement is secured to -a dominant estate, and is designed to benefit the same in whosoever hands it may be, it will, as a general proposition, inure to the benefit of the owner of any part of thp same into which it may be divided, provided the burden upon the ■servient estate intended to be created is not thereby enhanced.” Washburn on Easements, 99. True, the terms *540 of the grant by which the plaintiff acquired his title, are not set out, nor is it averred that the right-of-way was granted in express language, or by the use of the word “ appurtenances”. It is averred, however, that he purchased the land, and “ is in possession thereof and the owner in fee,” which, we think, must be construed as being equivalent to an allegation of the grant of the fee simple estate in the land to him. And it is the established rule in this state, that the appurtenances to property pass with it, upon its alienation, without the use of the term privilege or appurtenance in the conveyance. Morgan v. Mason, 20 Ohio St. 401. In the case cited above-it was held that a right-of-way, or other easement appurtenant to land,' passed by a grant of the land, without any mention being made of the easement in the conveyance, and though neither the term appurtenance, or its equivalent be employed.
Neither is the defendant in any better position than his grantor ; for, a grant of the servient estate, carries with it the burdens imposed upon it by the grantor, and the grantee takes it with all those burdens which appear, at the time of" the sale, to belong to it. Washburn on Easements, 90. It not only appears, that at the time the defendant bought his land, the easement was apparent and in actual use, so that he might properly be charged with notice of its existence, but it is plainly alleged, that he bought with knowledge of it, and of all the facts relating to its establishment, and subject to it. These parties therefore, stand in the shoes of their respective vendors, and hold their lands with the qualities and burdens-impressed upon them at the time of their purchase.
Granting this to be so, it is nevertheless contended by the plaintiff in error, that the agreement concerning the establishment of the way, is invalid, because it was verbal, and without consideration, and therefore ineffectual to create a servitude upon his land. Without stopping to consider whether, if the contract were^verbal only, it would on that account be inoperative, notwithstanding its long recognition by the parties to it, and. their performance of it, it is sufficient to say. that this ground of objection to the contract no where appears in the record. *541 It is true, the petition does not allege that the contract was in writing. It does however, allege that an agreement was made, which, as the term imports, must be construed to mean a valid agreement, one possessing all the requisites of a binding contract, unless upon the whole pleading, a different interpretation is required; which is not the case here. Besides, the defendant in his answer, does not make the defense that the contract was verbal merely, but denies that there was a contract. A written agreement, undoubtedly would have been competent evidence in proof of this issue; and, in support ■of the judgment, it will be presumed, in the absence of anything in the record to the contrary, that the finding of the court upon the issue, was sustained by competent, and suffi•cient evidence.
The definite establishment of the boundaries of the way, and the appropriation by each proprietor, of his lands embraced within them, for the mutual benefit of the'lands of all, constituted a sufficient consideration to support the agreement. Each owner, secured a right or interest in the nature of a servitude in the lands of the others included in the way, and the benefit ■accruing to his estate from the use of the same.
2. The other question in the case, relates to the remedy. It is said, that equity will not interfere to restrain trespasses; that for such wrongs, the remedy is at law, and damages afford adequate redress.
The general rule, that equity will not exercise its jurisdiction where there is a plain and adequate remedy at law, is not denied; but where, as in this case, the threatened obstruction of an easement, would, if carried into execution, permanently destroy it, and defeat the plaintiff’s right, the application of the rule may b"e doubted. After the mischief is •done, the remedy at law may be neither plain or adequate. The damages are not always immediately appreciable, or capable of measurement by any certain rule. But it is not deemed necessary to place the decision upon that ground. We ■are of opinion^ that the plaintiff may maintain his action in equity, to enforce the contract of his vendor, by restraining the 'destruction of the easement secured by it. Courts of equity, *542 will recognize and enforce agreements made by adjoining proprietors, concerning the occupation, and mode of use of their lands, not only, as between the parties to the contract, but as between their vendees with notice. And to warrant such equitable relief, it is not material that the agreement be binding as a covenant real running with the land, or that any privity of estate subsist between the parties. Parker v. Nightingale, 6 Allen 341; Western v. McDermott, L. R. 2 Ch. App. 72 ; Tulk v. Moxhay, 2 Phillips Chan. R. 774; Talmadge v. Bank, 26 N. Y. 105; Seegar v. Harrison, 25 Ohio St. 14.
In Tulk v. Moxhay, a covenant by the grantee of a piece of land, to use it as a private square, was enforced against a purchaser from the grantee with notice. The Lord Chancellor said,'the question was not, “whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract' entered into by his vendor, and with notice of which he purchased.” And he adds, “that the question does not depend upon whether the covenant runs with the land, is evident from this, that if there was a mere agreement and no covenant, this court would enforce it against a party purchasing with notice of it.”
In Western v. McDermott, supra: “ Each of the original owners of houses in a row entered into covenants with the original owner of all the land on which they stood as to what should be done in the garden attached to each house.” It was held “ that whether the covenants did or did not run with the land, a purchaser of one of the houses, with notice of the covenants, would be bound by them in equity;” and that the owner of a house who was injuriously affected by acts which were contrary to the covenants, might proceed against the party who commits them, to restrain the 'breach of the covenants.
In Parker v. Nightingale, supra, Bigelow, C. J., speaking of restrictictions and limitations which may be put upon property by means of stipulations, fastening servitudes or easements ■upon it, and the jurisdiction of equity to enforce such agreements, says that such restrictions and limitations “ derive their validity from the right which every owner of the fee has to dispose of his estate, either absolutely or by a qualified grant, or *543 to regulate the manner in which it shall be used and occupied. So long as he retains the title in himself, his covenants and agreements respecting the use and enjoyment of his estate will be binding on him personally, and can be specifically enforced in equity. When he disposes of it by grant or otherwise, those who take under him can not equitably refuse to fulfill stipulations concerning the premises of which they had notice. It is upon this ground that courts of equity will afford relief to parties aggrieved by the neglect or omission to comply with agreements respecting real estate after it has passed by mesne conveyances out of the hands of those who were parties to the-original contract. A purchaser of land with notice of a right or interest in it existing only by agreement with his vendor, is bound to do that which his grantor had agreed to perform,, because it would be unconscientious and inequitable for him to violate or disregard the valid agreements of the vendor in regard to the estate, of which he had notice when he became the purchaser. In such cases it is true that the aggrieved party can often have no remedy at law. There may be neither privity of estate nor privity of contract between himself and those who attempt to appropriate property in contravention of the use or mode of enjoyment impressed upon it by the agreement of their grantor, and with notice of which they took the estate from him. But it is none the less contrary to equity that those to whom the estate comes, with notice of the rights of another respecting it, should' wilfully disregard them, and in the absence of any remedy at law the stronger is the necessity of affording in such cases equitable relief if it can be given consistently with public policy, and without violating any absolute rule of law.”
It was held by this court in Seegar v. Harrison, 25 Ohio St. 14, that “ Where the proprietors of adjacent lands agreed that each would appropriate from his land a strip to be used in common for a public street, and conveyances and improvements have been made on the faith that the street would be opened, the agreement may be enforced in equity, against a purchaser with notice, whether the 'public authorities accept the street as dedicated to public use or not.” White, J., in *544 «peaking of the remedy says, that<e in the absence of fraud or mistake, the agreement ought, upon well established principles of equity, to be enforced, whether the public authorities accept the street as dedicated to public use or not.”
Upon the same principle, where proprietors of adjacent lands, by mutual agreement, definitely establish the boundaries of a private way previously laid out along their lines, and .appropriate the strip of land embraced therein to be used as a perpetual easement for the benefit of the abutting lands of ■each, and the common benefit of all, and in pursuance of the agreement, fence to the boundaries so agreed upon, and thereafter improve and use the way thus established, the agreement may be enforced in equity, at the suit of a purchaser from one of such proprietors, against a purchaser with notice from another. Injunction preventing the permanent obstruction of, ■or interference with such way, is a proper mode of enforcing the agreement.

The judgment of the circuit cou/rt is reversed, and that of the common pleas affirmed.