## LIABILITY OF AN ADMINISTRATOR AFTER CONFIRMATION OF HIS FINAL ACCOUNT.

Circuit Court of Putnam County.

THE STATE OF OHIO, EX REL D. T. McCULLOUGH, v. JOAB MOFFITT ET AL.

Decided, 1908.

*Estates of Decedents—Administrator Submits Resignation and Files Final Account—Account Confirmed and Administrator Discharged —Such Discharge Held to be General—And Administrator Not Guilty of Maladministration in Failing to Answer in a Suit Thereafter Brought.*

1. Where an administrator submits to the probate court his resignation to become effective on a certain day named, and files what he denominates "an account of final distribution," and an entry is made reciting that the account has been found correct and is allowed by the court, and the "administrator is discharged," the discharge will be construed to be general and final, and not simply a discharge as to matters found in the account.

2. An administrator so discharged can not be held liable for maladministration, in that he failed to answer when thereafter served with summons in a proceeding involving among other things a chose in action belonging to the estate of his decedent, and in consequence of such failure default judgment was taken against the estate.

*Handy & Unverferth,* for plaintiff.
*Ross & Kinder* and *J. W. Smith,* contra.

PER CURIAM.

In May, 1888, Daniel U. McCullough, then the owner of certain lands in Putnam county, Ohio, entered into a written con-

tract with the New York, Mahoning & Western Railroad Company agreeing to convey to said company a right-of-way for its railroad over said lands in consideration of certain things to be done by the company, in the way of removing and placing on new foundations buildings standing on said proposed right-of-way, etc., and the payment by said company to him of $2,150.

In pursuance of said agreement said company took possession of the part of said lands to be so used by it for railroad purposes, removed and placed new foundations under said buildings as agreed, built its railroad on said lands, the same forming part of a continuous line of railroad ever since in operation between Ottawa, Ohio, and Findlay, Ohio, but neither said company nor any of its successors in interest, hereinafter mentioned, ever paid said consideration price nor any part thereof.

On May 22d, 1889, David F. McCullough died intestate, in Putnam county, Ohio, leaving several children (among them the relator) his heirs at law.

On June 17th, 1889, the defendant, Joab Moffitt, was duly appointed and qualified as administrator of the estate of said decedent, in the Probate Court of Putnam County, Ohio.

On November 25th, 1891, said administrator filed in said court what he denominated his "second and final account," in which he stated certain items of debit and credit between himself and said estate, and showed a balance of $346.25 in his hands for distribution, followed by a statement, to-wit:

"Said administrator states that there is an unsettled claim against the railroad company, whose road passes through the lands of said D. U. McCullough, deceased, arising by virtue of a contract made by said defendant and one H. E. McClure, the agent of the railroad company, and which is wholly uncollected, and which said administrator has so far failed to collect or compromise, and he further states that so far he has made no effort to collect the same by law by reason of difference amongst the heirs with regard to the same.    *    *    *

"Said administrator hereby tenders to this court his resignation as administrator of the estate of D. U. McCullough, deceased, to take effect January 20th, 1892, for the reason that it will be necessary to have some litigation to settle said estate in

full, and he has not the time to attend to the same, and therefore asks that the same may be accepted.

"Ottawa, O., 11-25, 1891.

"JOAB MOFFITT."

On January 2d, 1892, the probate court took action in the matter set forth in this account, as shown by its journal of January, 1892, as follows:

"Joab Moffitt, administrator of the estate of D. U. McCullough, deceased, having on the 25th day of November, A. D. 1891, filed in this court his second and final account, and notice of the filing and of the time of hearing thereof having been given, for not less than three weeks prior thereto by publication in the *Putnam County Sentinel,* a newspaper of said county, the said account is now here heard.

"Whereupon the court finds said administrator chargeable with the assets of the estate of said D. U. McCullough, deceased, to the amount of $3,129.26, and that he is entitled to credits in the sum of $2,783.01, leaving due said estate the sum of $346.25, which said amount said administrator is hereby ordered to distribute to the heirs only, and not to widow of said decedent, according to law."

Said administrator also filed in said court what he denominated an "account of final distribution," showing how he had distributed and paid out said balance of $346.25.

The record of the probate court sets forth that this account was "produced to this court" on the 16th day of January, 1892, but all the items are dated November 25th, 1891, and the verification thereof bears the same date, and this account was doubtless filed on that day, *i. e.,* the same day as the "second and final" account.

The record of that court of January 16, 1892, further shows as follows:

"This day came Joab Moffitt, administrator of the estate of D. U. McCullough, deceased, and produced to this court his account of final distribution of assets of the personal property and estate of said decedent, remaining in his hands after his final settlement heretofore made, and the same being found in all respects correct, was allowed by the court, ordered filed and duly recorded, and the administrator is hereby discharged."

This suit in the court of common pleas was brought by the relator under favor of Section 6212, Revised Statutes, and an order of the Probate Court of Putnam County, Ohio, made in pursuance thereof, on behalf of himself and others interested in the estate of David U. McCullough, deceased, against Joab Moffitt, as principal and the other defendants as his sureties on the bond of said Joab Moffitt, as administrator of the estate of said David U. McCullough, deceased, for and on account of alleged maladministration.

A jury was impanneled for the trial of the issues, but at the conclusion of the introduction of the evidence in chief on behalf of the plaintiff, the jury, on motion of the defendants and under direction of the trial judge, returned a verdict against the plaintiff, upon which verdict judgment was entered against the plaintiff, and to that judgment the plaintiff prosecutes error in this court.

The evidence submitted on behalf of the plaintiff tended to establish certain facts (most of which were not controverted by the pleadings or otherwise), which plaintiff contends entitled him to have the cause submitted to the jury, and to have a verdict in his favor.

The facts investigated upon the trial making up the history of the transactions above outlined, and other matters related thereto, were many and were somewhat complicated, but only such facts will be stated herein (in addition to those hereinbefore stated) as may be deemed vital and controlling and such as may be essential to an understanding of the views and opinions of this court.

It appears that by judicial sale the property of the N. Y., M. & W. R. R. Co. was acquired by one Dorwin in 1890, and that it was thereafter transferred by Dorwin to the Findlay, Ft. Wayne & Western Railroad Co., but these sales and transfers did not affect the claim in favor of the estate of Daniel U. McCullough, or any right in or lien upon the right-of-way that might have existed in favor of his estate or his heirs.

Afterward a suit was brought in the Court of Common Pleas of Putnam County, Ohio, against the Findlay, Ft. Wayne &

Western Railroad Co. et al, by one Sands, to enforce a lien and marshall all liens upon the property of said company so acquired, and a like suit was brought in said court by one Josephine Mass, for a like purpose.    These suits were consolidated.

In November, 1893, one Charles G. Patterson, a party defendant therein, set forth in an amendment to his answer and cross-petition, that Joab Moffitt, as administrator of the estate of D. U. McCullough, deceased, had a claim for right-of-way against the railroad company, but that the claim was not valid, and he asked that said administrator might be made a party defendant, and be compelled to set up said claim or be forever barred from asserting the same.    Moffitt, as administrator, was duly served with the summons, but he failed to answer, and ultimately a decree was entered in the case which contained a finding that the estate had no valid claim against the company or interest in or lien upon the property.

The alleged maladministration of said administrator in making such default and in permitting such decree to be taken against the estate in the basis of the action the judgment wherein is now under review.

There is a question made as to whether the administrator was not excused from asserting the claim in that suit and as to whether the plaintiff in the case under review are not estopped from now complaining of such action by reason of the assertion and prosecution of the claim in that suit by certain of the heirs, and by certain circumstances connected therewith, but we do not deem it necessary to consider this question.

A general demurrer to the petition was sustained and judgment for defendant was given by the Court of Common Pleas of Putnam County, on the ground, it is said, that the petition discloses that if there was a cause of action against the said railroad company on the right-of-way contract, it was in favor of the heirs who inherited the lands affected by the grant, and was not in favor of the administrator.    This judgment was reversed by the circuit court of that county, whereupon an answer was filed and the trial to which we have referred took place, resulting in the judgment now under review.    But counsel for de-

fendant in error has urged us to examine into that question *de novo,* and we have done so, and we concur in the conclusions announced by the circuit court of the third circuit.    Upon this question counsel for both parties place much reliance upon the case of *Railway Co.* v. *Lawton,* 20 O. S;, 401.    We are unable to see that the decision in that case necessarily supports either contention.    The precise question here presented, *i. e.,* whether suit to enforce the contract either specifically or by foreclosing a lien, must be brought by the personal representative or the heirs, does not seem to have been involved in that case.    There the litigation was between the original contracting parties.    In our judgment this contract resulted in an equitable conversion of the interest in real estate into personal property, so that the claim was one for money enforceable by the personal representative only, and for the benefit of the estate he represented.    It was a chose in action, and constituted an asset of the estate.    Without discussing the question *in extenso,* we cite in support of our views, and as an expression of our views upon this question the case of *Isham* v. *Buckeye Stave Co.,* 2 C.C.(N.S.), 1, and especially the authorities cited in the opinion in that case, including quotations from Pomeroy's Equity Jurisprudence, and a decision by Judge Wildman in a case which on that point is quite like this in principle, found in 6 N. P., 60.

Manifestly this suit can not be maintained against the administrator and his sureties on the bond, if at the time of the alleged default or misfeasance Moffitt had been discharged as administrator, and released of all responsibility with respect to the trust.

The action of the judge of the trial court in directing a verdict for the defendants was based (as we are advised) upon his conclusion that the administrator had been so discharged and exonerated.

Upon the introduction in evidence of the record of the probate court discharging the account of the administrator, and especially his tender of his resignation of November 25th, 1891, and the order of discharge on January 16th, 1892, it devolved upon the trial judge to put a construction thereon, and to determine

whether (as contended by counsel for defendant in error) such discharge was general and final and relieved Moffitt from further or future duties respecting said estate; or whether (as contended by counsel for plaintiff in error) it was simply a discharge as to the matters involved in his account of final distribution.

This duty the trial judge discharged when he directed the verdict for the defendants. Was he correct in his conclusion that the discharge was general and final? If so, that was an end of the controversy.

In the case of *Weyer et al* v. *Watt, Exr.*, 48 O. S., 545, which was an action by an executor to collect a note which was an asset of the estate, it was held, in support of the authority of the executor to maintain the suit, that an entry based upon what he denominated his final account, that the executor "had well and faithfully discharged his duties, and paid out to the proper person or persons all moneys coming to his possession as executor," and ordering that the account he made final, and said "executor discharged from his said trust," and that he "distribute among the legatees and distributees of the estate of said decedent all the uncollected assets of said estate," was not a final discharge as to the notes (one of which was the note sued on) reported by him in his final account to be uncollectable.

The court, speaking through Williams, C. J., after quoting the statutes relating to the question, said, *inter alia*:

"Under our legislation  *  *  *  an executor or administrator may be removed by the probate court for cause, or he may resign his trust with the consent of the court. But we find no power conferred upon that court to discharge an executor or administrator from his trust, upon the settlement of what is called a final account, and thus extinguish his authority as trustee."

And in the absence of a tender of a resignation, or charges or findings justifying removal, the court held that there was not in that case a final discharge as to the assets unadministered. The court thought it *obvious* that the order was not *intended* to have such operation.

But, in the case at bar it appears that a resignation had been tendered, and was before the court for its consideration when the entry was made approving the account and concluding, "and the administrator is hereby discharged," and the record of the probate court is to be construed in the light of that important circumstance.

This tender of his resignation is dated November 25th, 1891, and was "to take effect January 20th, 1902." That is, it was the expressed desire and purpose of the administrator that it should take effect at that time. The date of the discharge is January 16th, 1892. Whether it then took effect, or was ineffectual until four days later, we need not consider, as nothing depends upon the solution of that question.

It seems to us quite apparent that, in thus ordering the discharge of the administrator under those circumstances, the probate court was acting not only upon the final account, but upon the tendered resignation as well.

It is true that the phrase, "the administrator is hereby discharged," is appropriate to a discharge respecting an accounting only; but we think it is sufficient to effect the acceptance of a resignation, though doubtless more explicit—perhaps more appropriate terms—could have been chosen for that purpose.

While Section 6015 provides that the court may receive the resignation "if it thinks fit, and upon good cause shown," the absence of a specific finding that the court thought it fit or thought the cause sufficient can not defeat what was actually done. Such findings are not essential to the validity or effectiveness of the order.

The provision in Section 6015, that the court upon receiving such resignation shall "appoint an administrator in his place," and that in Section 6016, that "the acceptance of such resignation *and the appointment of another administrator*, shall not affect the liability of such former executor or administrator," etc., we do not regard as making the appointment of a successor essential to the taking effect of the acceptance of the resignation.

The matter of appointing a successor is something not at all within the control of the administrator. He has no duty to perform with respect thereto, and the fact that none was appointed in this case we regard as wholly immaterial.

We conclude and hold that the attempt of November, 1893, to obtain jurisdiction over this estate, and over Joab Moffitt as administrator thereof, was futile and ineffectual because he was no longer the administrator of the estate. That therefore he had no duty to perform in the premises, and could not have been guilty of misfeasance in failing to attempt to prosecute the claim on the right-of-way contract.

It is suggested that thereafter Joab Moffitt allowed the prosecution of a suit on this claim in his name as such administrator, whereby he is estopped to deny that he was such administrator at the earlier date.

We are unable to see how in any event such action after his discharge could bind his sureties on his administration bond, or how a suit for misfeasance in an earlier transaction could be supported by a showing that after being discharged he represented that he was still the administrator.

But, aside from this, we do not find in the circumstances disclosed enough to have made it the duty of the court to submit the case to the jury on the theory that this defendant might be bound under the principles of estoppel, notwithstanding his final discharge before the happening of the event supposed to raise the claimed estoppel.

We find no error in the record prejudicial to the rights of the plaintiff in error, and therefore the judgment of the court of common pleas is affirmed.