Johnson, J.
It is shown by the pleadings before the commission and the undisputed evidence that The Dillonvale & Smithfield Railroad Company was incorporated and organized under the laws of Ohio as a railroad company and that it constructed the two and one-eighth miles of railroad from Dillon-vale to Bradley, described in the pleadings. Most of its right of way was acquired by purchase and some of it by condemnation proceedings in the exercise of the right of eminent domain. The articles of incorporation show that the purpose was to build, operate and maintain a railroad from Dil-lonvale to Smithfield, a distance of about 22 miles.
The company being so created and organized is a common carrier under obligation to serve the public without discrimination, and is amenable to the supervision of the public utilities commission in the conduct of its business. Its line of railroad is impressed with a public use.
*653 The public has the same rights in connection with this railroad that it has with reference to the railroad of any corporation orgánized under the laws of the state as a common carrier. Morgan Run Ry. Co. v. Public Utilities Commission, 98 Ohio St., 218; State, ex rel. McGhee, Atty, Genl., v. Black Diamond Co., 97 Ohio St., 24; State v. Hazelton & Leetonia Ry. Co., 40 Ohio St., 504; Scofield v. Lake Shore & M. S. Rd. Co., 43 Ohio St., 571; Adena Rd. Co. v. Public Service Commission, 92 Ohio St., 1, and Hocking Valley Ry. Co. v. Public Util. Commission, 92 Ohio St., 9.z
The answers of the New York Central and Wheeling & Lake Erie railroad companies admit that they are created and organized as common carriers and operate trains over the tracks of the Dil-lonvale & Smithfield company by virtue of contracts with the owner.
It is admitted that a rate schedule has been filed with the public utilities commission covering this road.
The commission found from the testimony that discrimination had been practiced against certain receivers and shippers of freight along the Dillon-vale & Smithfield road, in that the same has been used for the transportation of certain merchandise consigned to consignees in which the defendant coal company is interested, while a similar service has been refused to other shippers and receivers of freight similarly situated.
The evidence shows that the line was leased to The Wheeling & Lake Erie Railroad Company before it was constructed and that it is being operated *654 by the latter company solely to transport coal of The United States Coal Company to market and to carry goods and merchandise of the coal company to its store in Bradley, which is a town of about 700 population with several stores and the usual business, industrial and social activities of such a place.
It is conceded that The United States Coal Company owns substantially all of the stock in The Dillonvale & Smithfield Railroad Company, and it is contended that the railroad was not constructed as a common carrier, but only as an industrial track or switch, such as the coal company might lawfully build and operate for its own use.
Sections 10137 and 10138, General Code, are cited by the defendant Coal Company in support of its contention that it properly occupies a different relationship to the situation than other shippers located along the line.
Section 10137 provides for the organization of coal-mining and other similar companies and for carrying on their business, and for their holding real estate and personal property, etc.
Section 10138 provides that “The directors of such company may authorize its president, or other proper officer, to purchase or subscribe for, in the name of the company, such an amount of the stocks of any railroad, or other transportation company, as they deem necessary, in order to procure proper facilities for transportation for * * - * mines * * * of the company.”
These sections do not' authorize a coal or other company named in the sections to construct and *655 operate a railroad. It will be observed that Section 10138 simply permits a coal company to subscribe for stock in a railroad or other transportation company, but the statute does not confer any preference on the coal company by reason of such subscription, or give it any rights that the general public does not have in the. railroad company as a common carrier. The intention of the legislature manifestly was to permit coal and similar companies to assist, in and encourage the construction of railroads in the neighborhood of and leading up to their mining properties, and thus increase the transportation facilities of the • neighborhood, including the subscribing company.
Section 10141, General Code, authorizes mining companies to construct a railroad from the mine to any other railroad, and it is provided that in respect to such railroad “they shall be subject to and governed by the provisions of chapter two of this title.”
It will be observed that under that section the mining company simply builds its own line of road for its own purpose, subject to the provisions referred to. The provisions of that section have no relation to the incorporation and organization of a railroad company with rights of condemnation and other rights railroad companies organized as common carriers have.
In Miami Coal Co. v. Wigton, 19 Ohio St., 560, it was held that under the strict construction applicable to the grants of the power of' eminent domain to corporations the act does not authorize a mining company to exercise the same power to ap *656 propriate private property that is conferred on railroad companies by acts in relation to railroads.
By the provisions of Section 8861, General Code, “A person owning or operating a coal or iron-ore mine * * * who, as a means of removing the product thereof, uses or desires to use a railway, may construct one and run cars thereon, over or under any railroad or public highway, the consent of the owner of the fee in the land at such crossing first being obtained. Such railway shall be so constructed as in no wise to impede or interfere with the running of cars or the travel upon such railroad or highway, or in any manner injure or impair either, or any switch, building, or appurtenance connected therewith.”
The same observation must be made concerning this section as was made concerning Section 10141, General Code, just referred to. Section 8861, General Code, contemplates the construction of a private road or switch by a coal company for its own use. But in this case the railróad was constructed by a railroad company created and organized as a railroad company with the rights of eminent domain and all the powers, the duties and obligations ,of a common carrier. By accepting its charter as a railroad company it assumed obligations Jo the public. This being so it cannot lawfully refuse to receive and transport freight tendered to it by shippers to- and from such reasonable points along the line at which they may lawfully ship or receive it, and the company has no right to contract with another company or individual to give exclusive rights to transfer any commodity over any *657 part of the line. Morgan Run Ry. Co. v. Public Utilities Commission, supra, and authorities there cited.
It was held in D., X. & B. Rd. Co. v. Lewton, 20 Ohio St., 401, 412, that where the public has a real and substantial .right in the use of property which has been devoted to the public use under the sanction of the state that right should be properly safeguarded in every legal proceeding concerning the property.
In State v. Hazelton & Leetonia Ry. Co., supra, it was held that a railroad company assumes the performance of duties for the benefit of the public generally, and that when such a corporation for a period of five years fails to construct a line of railroad named in its charter, but condemns private property and constructs a railroad wholly unsuited to the wants of the public, and for' the benefit only of coal mines, owned and operated by the principal corporators and stockholders of such railroad company, it is a misuse of its corporate powers, franchises and privileges. In the opinion it is said: “Judging from the things done by the corporation, its sole object was to furnish a means of transferring the products of the private mines, owned and operated by the principal incorporators and stockholders, to a place where they could be, carried to market.”
In Railway Co. v. Lewton, supra, at page 412, Judge McIlvaine said: “The rights of the public must not be ignored; and it is the right of the public that this highway be maintained. It was by and *658 through the exercise of its power of eminent domain that it was established.”
The admissions made in the answers of the New York Central and Wheeling & Lake Erie railroads show that they are railroad companies duly created and organized as common carriers and that they are operating the four miles of The Dillonvale & Smithfield Railroad Company under contracts made with it. The lease to the Wheeling & Lake Erie company provides that it shall “at all times receive and transport coal and other freight coming from such line over and upon same to its line.” The lessee companies which control and operate the line in question being themselves common carriers are under obligations to serve the public indiscriminately. They cannot lawfully refuse to receive and transport freight properly tendered at reasonable points along the line and they have no right to contract to give to anyone exclusive rights to ship.
The provisions of Section, 567, General Code, are full and explicit in prohibiting any such discrimination.
The order of the commission was that the three railroad companies, defendants, should desist from handling shipments of merchandise for any receiver or .shipper of freight located along the line of the Dillonvale & Smithfield company, so long as such service is not available to all receivers and shippers of freight similarly situated.
This, is a negative order. The owning company and the operating companies are under obligation to serve the public. The commission should have gone further and ordered the railroad companies to *659 furnish reasonably adequate shipping facilities to the public indiscriminately, subject to such regulations and conditions as shall be found to be just and reasonable under the circumstances. . If the shipping business along the line of this short road is not sufficient to justify its maintenance and operation as a common carrier, it can be abandoned as such upon proper steps being taken. But having been constructed and operated by companies organized as common carriers under the laws of the state, they must serve the public until such steps are taken.
The line involved in this proceeding is small and its business not important, but the questions submitted to the court affect common carriers generally. If these defendant companies may arbitrarily determine what service they will render, and to whom, any company may do so.
The order of the commission will be modified and this proceeding remanded to the commission with instructions to prescribe such regulations for the operation of the road and for service to the public as are reasonable and just at Bradley under the circumstances, arid to require the defendant com- . panies to comply with same while they maintain and .operate the railroad.

Order modified and causé remanded for further proceedings.

Hough, Wanamaker, Robinson, Jones and Matthias, JJ., concur.