The Louisville, New Albany and Chicago Railway Co. v. Boney.

Filed March 6, 1889.

No. 13,449.

THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY v. BONEY.

RAILROAD.—*Consolidation.*—*Liability of New Company for Antecedent Debts.*— Where a consolidation of railroad companies takes place, in pursuance of the statute, the corporation into which the original companies are so merged becomes liable for all the valid debts and obligations of the consolidated companies, and a judgment *in personam* may be rendered against it therefor.

SAME.—*Execution.*—*What May Not be Sold.*—Neither the franchise and privileges of a railroad company, nor any lands, easements, or things essential to the existence of the corporation, or necessary to the enjoyment of its franchise, can be sold on execution or order of court to satisfy a judgment at law against it. *Aliter*, as to locomotives, cars and other personal property.

SAME.—*Contractor.*—*Lien.*—*Enforcement.*—A contractor for the construction of a road-bed for a railroad company acquires, under the statute, a lien upon so much of the road-bed as is constructed by him, which may be foreclosed; but there is no statutory provision for the sale of the road

as an entirety, or the franchise, or anything that would destroy or impair the use of the franchise, and while the corporation remains solvent payment must be enforced out of other property or funds in such appropriate manner as a court of equity may determine.

From the Porter Circuit Court.

*G. W. Easley, G. W. Friedley* and *G. R. Eldridge,* for appellant.

*J. W. Youche, A. C. Harris* and *W. H. Calkins,* for appellee.

MITCHELL, J.—This proceeding was instituted by Mathias Boney against the Louisville, New Albany and Chicago Railway Company, the complaint being essentially in the nature of a creditor's bill. Putting aside much irrelevant matter set up in the pleadings, the material facts upon which the questions for decision depend are the following:

In September, 1874, Boney entered into a written contract with the Indianapolis, Delphi and Chicago Railroad Company, under which he constructed the grade, and otherwise prepared about three miles of the company's road-bed in Lake county, ready for the reception of the ties and rails. In February, 1875, within the time prescribed by statute, he gave notice of his intention to hold a contractor's lien upon that part of the road-bed which he had constructed, stating in his notice that a specified sum remained due him for work performed under his contract. He subsequently instituted suit in the Lake Circuit Court, and in March, 1876, recovered a personal judgment against the railroad company, and obtained a decree foreclosing his lien, in pursuance of which he afterwards sold that part of the company's road-bed described in his lien and decree. Boney became the purchaser, the amount bid being only a part of the amount of his judgment. Subsequently other portions of the company's right of way were levied upon to satisfy the balance of the Boney judgment, which levy seems never to have been released, nor otherwise disposed of.

After Boney had acquired his lien, the franchises and property of the Indianapolis, Delphi and Chicago Railroad Company were sold in pursuance of a decree foreclosing a trust mortgage which had been executed by the railroad company, but which was a junior lien to that of Boney. The sale resulted in the organization of a new corporation called the Chicago and Indianapolis Air Line Railroad Company, which succeeded to all the rights of the original corporation. Boney was not made a party to the foreclosure suit. The Chicago and Indianapolis Air Line Company completed and put in operation what was formerly known as the Air Line road, from Indianapolis to Chicago, in 1881, using the old right of way through Lake county, including the three miles theretofore constructed by the plaintiff, and upon and in respect to which he had taken the lien and the other proceedings above mentioned. Subsequently, in the same year, the corporation last above mentioned became consolidated with, and its property and franchises incorporated into, the Louisville, New Albany and Chicago Railway Company, which then owned and operated a railroad from Louisville to Michigan City. This latter company has since continuously owned and operated, as part of its system, what was formerly known as the Air Line road from Indianapolis to Chicago. After the consolidation it was adjudged, in an action to which Boney and the appellant railroad company were both parties, that the former took nothing by his purchase at the foreclosure sale made in pursuance of the decree foreclosing his contractor's lien above mentioned. Thereupon, in August, 1885, this suit was instituted by Boney in order to establish his claim against the appellant railroad company, and to obtain the decree of the court directing the sale of the road-bed constructed by him and for general relief.

The court found the facts specially, and gave judgment that the Louisville, New Albany and Chicago Railway Company pay the plaintiff the sum of four thousand five hundred and eighty dollars within forty days from the date

of the judgment. It was further ordered that, in default of payment within the time fixed, the sheriff of Lake county should, after giving three weeks' notice, sell the railroad of the Louisville, New Albany and Chicago Railway Company, "as the same is now located, constructed, owned, operated, and controlled, from the city of New Albany, in Floyd county, Indiana, to Michigan City, in LaPorte county, Indiana, and from the city of Indianapolis, in Marion county, Indiana, to the State line between Indiana and Illinois, * * together with all the rights, franchises, privileges and immunities of said company connected therewith or incident thereto." From this judgment and order of sale the railway company prosecutes this appeal. Two questions are presented for decision : (1) Did the appellant railway company become liable, so that a judgment for the amount of the plaintiff's claim was properly rendered against it? (2) If it did become liable to pay the plaintiff's claim, can the order directing the sheriff to sell all of its property within the State of Indiana, including all the rights, franchises and privileges connected therewith or incident thereto, be maintained?

In respect to the first question, it may be said, an examination of the statute will disclose that ample provision is made for the consolidation of railroad companies, but there is no express statutory declaration that the corporation into which the consolidated companies become merged shall assume or become liable for the debts and obligations of the original companies. The effect of a statutory consolidation is, however, practically to dissolve the old corporations into the new, which takes their place and succeeds to all the property, rights, franchises and privileges of the several consolidated companies.

While it is an open question in some jurisdictions whether or not, in the absence of a statute, the debts of the original companies follow as an incident of the consolidation, and become by implication the obligations of the new corpora-

tion, it is settled in this State that the act of consolidation involves an implied assumption by the new company of all the valid debts and liabilities of the consolidated companies. *Indianapolis, etc., R. R. Co.* v. *Jones*, 29 Ind. 465; *Columbus, etc., R. W. Co.* v. *Powell*, 40 Ind. 37; *Jeffersonville, etc., R. R. Co.* v. *Hendricks*, 41 Ind. 48.

The rule which the authorities support seems to be, that where one corporation goes entirely out of existence by being incorporated into another, if no arrangements are made respecting the property and liabilities of the corporation that ceases to exist the corporation into which it is merged will succeed to all its property, and be answerable for all its liabilitiés. *Thompson* v. *Abbott*, 61 Mo. 176; *Mount Pleasant* v. *Beckwith*, 100 U. S. 514; *Pullman Car Co.* v. *Missouri Pacific Co.*, 115 U. S. 587.

After the consolidation the liability of the new company is substituted for that of the original companies, which have, to all intents and purposes, ceased to exist. 2 Morawetz Corp., section 955. There was hence no error in rendering a judgment *in personam* against the Louisville, New Albany and Chicago Railway Company.

The other feature of the case presents a question of much greater difficulty. According to the established rule of the common law, which controls the current of modern authority, the franchises of a corporation, mere incorporeal hereditaments, were not subject to seizure and sale upon execution, in the absence of express statutory provisions authorizing the sale, and prescribing the method of transfer. It follows, as a natural sequence, that lands, easements, or things essential to the existence of the corporation and the execution of its corporate duty, and without which its franchise would be of no practical use, can not be levied upon and sold on execution at law, so as to detach them from the franchise and thus destroy its use. *Indianapolis, etc., G. R. Co.* v. *State, ex rel.*, 105 Ind. 37; *Ammant* v. *President, etc.*, 13 S.

&. R. 210; *Baxter* v. *Turnpike Co.*, 10 Lea, 488 (4 Am. & Eng. Corp. Cases, 134); Herman Ex., section 361.

Thus it his been said, in effect, that the franchises and corporate rights of a company, and the means which are necessary to enable it to maintain its existence, and subserve the objects and purposes of its creation, are incapable of being granted away or transferred by any act of the company, without express authority, or by any adverse process against it. *Susquehanna Canal Co.* v. *Bonham*, 9 W. & S. 27.

Accordingly, where, upon an execution issued on a judgment recovered against a canal company, the marshal had seized and advertised for sale a toll-house and sundry canal locks and other tangible property, an injunction was sustained, the court holding that, in the absence of a statute, neither the franchise of the company, nor any lands' or works essential to the enjoyment of the franchise, and which could not be separated from it without destroying or impairing its value, could be sold on execution. *Gue* v. *Tide Water Canal Co.*, 24 How. 257; *Covington Drawbridge Co.* v. *Shepherd*, 21 How. 112.

In a recent case, in which it appeared that a contractor had recovered a judgment against a railroad company, under which the " right of way to the railroad, so far as the right of way has been obtained, and all appurtenances belonging to said railroad," were sold by the sheriff and conveyed to the purchaser, the Supreme Court of the United States held the sale void, saying, in effect, that the company had no estate in its right of way capable of being sold on execution on a judgment at law, apart from its franchise to own and operate a railroad; that what the company acquired was merely an easement in the land to enable it to discharge its function of making and maintaining a public highway, the fee of the soil remaining in the grantor. Moreover, the court said, in substance, that it would be clearly violative of the policy of the State under whose laws the railroad company had been organized, to permit a private individual

to seize and appropriate, by means of an execution·sale, the right of way which had been acquired by the railroad company in pursuance of the purposes for which it was organized. *East Alabama R. W. Co.* v. *Doe,* 114 U. S. 340; Freeman Ex. (2d ed.), section 179.

" It may be considered as settled, that a corporation can not lease or alien any franchise or any property necessary to perform its obligations and duties to the State, without legislative authority." *Black* v. *Delaware, etc., Canal Co.,* 22 N. J. Eq. 130–399. *Thomas* v. *Railroad Co.,* 101 U. S. 71.

Although a corporation, in respect to its capital, may be private, it may have been created, nevertheless, to accomplish objects in which the public have a direct concern, and its authority to acquire and hold property may have been conferred upon it in order that these objects might be consummated. In such a case, the corporation takes its franchise, together with such property as the statute enables it to acquire by the exercise of the power of eminent domain, as a trust from the State, and it can neither alien the one nor the other, without special authority, nor can they be seized and sold by any adverse process against it, unless express provision to that end has been made by statute. *Stewart's Appeal,* 56 Pa. St. 413; *Richardson* v. *Sibley,* 11 Allen, 65.

Accordingly it was held that a corporation organized for the purpose of introducing water into a town for the accommodation of the inhabitants, was, in a certain sense, a corporation for public purposes, and that its buildings and appendages necessary for carrying on its operations were not subject to sale in the process of enforcing a mechanic's lien taken thereon. *Foster* v. *Fowler,* 60 Pa. St. 27.

" For the sake of the public, whatever is essential to the corporate functions shall be retained by the corporation. The only remedy which the law allows to creditors against property so held is sequestration. And that remedy is consistent with corporate existence, whilst a power to alien, or liability to a levy and sale on execution, would hang

the existence of the corporation on the caprices of the managers or on the mercy of its creditors." *Plymouth R. R. Co.* v. *Colwell,* 39 Pa. St. 337 (80 Am. Dec. 526.)

While it is true that " the franchise to be a corporation is not a subject of sale and tranfer unless the law, by some positive provision, has made it so, and pointed out the modes in which such sale and transfer may be effected," and while the authorities abundantly justify the statement that property acquired and held by a corporation for the exclusive purpose of enabling it to accomplish the purposes of its creation can not, without like authority, be either directly or indirectly alienated, it does not follow that the creditors of such a corporation are remediless.　1 Freeman Executions, section. 179.

Railroad corporations may sell or mortgage personal property, and the better view of the subject seems to be, that the corporation's right voluntarily to alienate property, and the creditor's power to subject it to the payment of corporate debts, stand upon the same footing.　*Coe* v. *Columbus, etc., R. R. Co.,* 10 Ohio St. 372 (75 Am. Dec. 518.)

As has been said, there is a distinction between the road and structures immediately connected therewith, and appliances afterwards obtained for the purpose of operating the road.　" The interest or right of way in the land required for the construction of the road, the timber and iron of the track, and the depots and structures for the supply of water and the like, are said to be part of the realty ; and the road is not regarded as so constructed and prepared for use until such things are affixed."　But when the road is thus constructed and prepared for use, locomotives, cars and other articles and materials, some of which are consumed in the use, are requisite, and the conclusion is well supported that these, when not in actual use, are liable to seizure and sale for the payment of debts.　*Boston, etc., R. R. Co.* v. *Gilmore,* 37 N. H. 410 (72 Am. Dec. 336) ; *Pierce* v. *Emery,* 32 N. H. 484 ; *Coe* v. *Columbus, etc., R. R. Co., supra.*

The seizure and sale of such property does not confer any right in the franchise of the corporation or to any of the privileges of the corporation. It is analogous to the case in which it appeared that the copyright of a map had been acquired under the act of Congress, and the copper-plate engravings of the author had been seized and sold on execution; it was held that the intangible right to strike off and sell copies of the map was not sold. *Stephens* v. *Cady*, 14 How. 528.

In all those cases in which the owner of an intangible right, such as letters-patent and the like, might himself, voluntarily, assign it, although property of that description is not capable of being seized and sold on account of its incorporeal nature, it may, nevertheless, be subjected to the payment of the owner's debt by a bill in equity. *Ager* v. *Murray*, 105 U. S. 126.

A court of equity, may by its decree, compel the owner to execute an assignment of letters-patent, because he is himself possessed of the power to assign. But in the absence of a statute authorizing it, a court of equity can not compel a railroad corporation to transfer its franchise or such property as is essential to the exercise of its corporate obligations, because, in the absence of such authority, the corporation could not itself voluntarily alienate or assign its property of that description.

The plaintiff in the present case acquired a mere statutory lien upon so much of the road-bed as he had constructed. The statute provides that the lien may be foreclosed, but it makes no provision for the sale of the franchise, or of the road as an entirety, or of anything that would in effect destroy or impair the use of the franchise.

The statutes regulating the construction and operation of railroads within the State, plainly contemplate that the power to condemn lands and construct and operate railroads shall be confided to railroad corporations. There is no provision by which an individual citizen may condemn land for railroad

purposes, nor is it contemplated that lands condemned and used for such purposes may afterwards be sold out on execution or by order of the court, and become the property of an individual, so long as the corporation is not dissolved and continues in the use of its franchises and property. The statute, unlike that which authorizes railroad companies to execute mortgages on their property and franchises, gives the contractor a lien, and nothing more.

As it appears in the present case that the debt remains unpaid, the lien affords the basis for the exercise by a court of chancery of its flexible jurisdiction to coerce payment of the debt. The Legislature doubtless deemed it the wiser course to leave the method of coercing payment in each case to the court, rather than to prescribe a method which might be suited to one case and not to another. While the corporation is solvent, with property and officers and agents, subject to the order and process of the court, within the State, a court of chancery can not be without expedients for coercing payment out of any money or property which the corporation itself might have applied to that purpose.

We know judicially that the Louisville, New Albany and Chicago Railway Company has hundreds of miles of railroad in operation in the State of Indiana. There is no suggestion that the corporation is insolvent. It has, aside from its franchise and fixed property, perhaps many thousands of dollars' worth of property within the State which is subject to seizure and sale ; besides, it has many financial officers and agents in the State who receive daily thousands of dollars for the corporation. All these are subject to the order and process of the court. This is the extent to which the court can go until it appears that the corporation is insolvent and unable to pay its debts or meet its current obligations and liabilities—unable, in fact, longer to discharge the duties resting upon it as a corporation. In such a case, doubtless, a court of chancery would have the power to take possession of the corporate property by means of a receiver and wind up the

corporation and sell its property.   Upon that subject we decide nothing until a case arises.

The conclusion of the whole matter in the present case is, that the order of the circuit directing the railroad to be sold as an entirety, together with all its franchises, privileges and immunities incident thereto, was in excess of the power of the court.   So far as cases relied on seem to support a contrary doctrine from that above enunciated, they are not deemed applicable to the facts in the present case.   *Dayton, etc., R. R. Co.* v. *Lewton,* 20 Ohio St. 401; *Railroad Co.* v. *James,* 6 Wall. 750.

The justice of the case requires that, to the extent that the decree of the court orders the sale of the railroad of the Louisville, New Albany and Chicago Railway Company, as in the decree specified, including its franchises, privileges and immunities connected therewith, it should be modified and reversed with the costs of this appeal.   So far as the decree orders and adjudges that the above named railroad company pay the plaintiff the sum therein named, it is affirmed, with leave to take such further steps, not inconsistent with this opinion, as may be deemed necessary to coerce payment of the judgment.

Filed March 6, 1889.