Filed Feb. 17, 1891.

———————◆———————

No. 15,646.

THE FARMERS LOAN AND TRUST COMPANY v. THE CANADA AND ST. LOUIS RAILWAY COMPANY ET AL.

PLEADING.—Sufficiency of.—Estoppel to Contest.—Arrest of Judgment.—An agreement entered of record, and trial had thereunder by the court, that no answers to a complaint and cross-complaint need be filed, but all matters of defence, set-off, counter-claim and reply may be given in evidence without further pleading, followed by a decree thereon, cuts off a motion in arrest of judgment, and precludes any question being raised concerning the sufficiency of the pleading, except the question of jurisdiction of the subject-matter.

SAME.—Issue, Waiver of.—A voluntary submission of a cause for trial is a waiver of a failure to file pleadings forming an issue, even in the absence of an express agreement to that effect.

JUDGMENT.—Interlocutory, What is Not.—A submission of a case for trial

The Farmers Loan and Trust Co. *v.* The Canada and St. Louis R'y Co. *et al.*

to the court upon complaint and cross-complaint, with an agreement to allow all defences to be given in evidence, followed by a finding that the the defendant's railroad ought to be sold, free of all encumbrance, to make assets to pay its indebtedness, and that the proceeds of the sale ought to be brought into court with leave to all parties to the action having liens, and all other lien-holders that may thereafter become parties to the action before final hearing, to establish their several claims, demands and liens, and their priority, as a lien upon the proceeds, and the rights of all such lien-holders ought to be transferred to the fund arising from the sale; followed by a reservation that the court reserves for its future adjudication the consideration and determination of the amount of the claims and liens and their priority as liens upon the proceeds of the sale, followed by a final decree, is not an interlocutory decree, but is conclusive upon the parties.

JUDGMENT.—*Sale of Railroad.*—A personal judgment against a railway company must be enforced against the entire railroad by a sale thereof, and not by a sale of an isolated part.

SUB-CONTRACTORS.—*Definition.*—*Mechanics' Liens.*—A sub-contractor is one who takes from the principal contractor a specific part of the work; but neither persons furnishing material, nor laborers on the work, are sub-contractors.

SAME.—*Payment.*—*Tender.*—*Mechanics' Liens*—A sub-contractor is bound to accept payment as provided in the principal contract; but if a proper tender is not made to him of the article in which he is to be paid, he may maintain an action for a money judgment. Material men and laborers, however, are not bound to accept anything in payment except money, whatever may be the contract between the owner and contractor.

MECHANIC'S LIEN —*Right to.*—*Compliance with Statute.*—*Results.*—The acquisition of a mechanic's lien results from a compliance with the requirements of the statute, and is not affected by the consequences which flow from its acquisition.

SAME.—*Enforcement.*—Over the question of enforcement the holder of a lien has no control. He has a right to have it enforced as the law directs, and not otherwise. He must pursue the terms of the statue.

RAILROAD.—*Mechanic's Lien.*—*Filing Notice.*—*Extent of Lien.*—In order to obtain a lien upon a railroad, a laborer or material man is only required to file notice in the recorder's office in the county where he furnished the material or did the work through which such road runs, and then such lien extends to the entire line of the road in this State. In case of a sale of the road and a transfer of the lien to the fund derived by the sale by the order of the court ordering the sale, the lien is transferred to the whole fund and not to a part.

SAME.—*Foreclosure and Sale of Railroad.*—A mechanic's lien on a railroad, although notice is filed only in one county, must be foreclosed against

The Farmers Loan and Trust Co. *v.* The Canada and St. Louis R'y Co. *et al.*

the whole line of road situate within the State, and the whole of that part of the road sold; a part of such part can not be sold.

SAME.—*Extends to the Entire Article Repaired.*—*Sale.*—A mechanic's lien for repairing an article extends to the entire article; and the whole of such article must be sold in order to enforce the lien.

SAME.—*Subsequent Mortgagee of Railroad.*—A lien acquired by filing notice in one county extends to the entire road within the State, and a subsequent mortgagee of the entire road takes his mortgage subject to such lien.

SAME.—*Mortgage.*—*Priority of Lien.*—*Bona Fide Holder.*—A mortgage of a railroad yet to be built to secure bonds issued to raise money for the construction of said railroad, is junior to a mechanic's lien acquired in furnishing material for or performing labor upon such railroad, unless it is affirmatively shown that the holders of such bonds paid value for them before notice of such liens.

SAME.—*Contractor can not Defeat Priority of Mechanics' Liens.*—A principal contractor can not defeat the liens of those whose debtor he is for work and materials, by asserting the lien of a mortgage executed by the owner by whom he was employed to build a house or a railroad. He can not defeat their liens by asserting a lien superior to them, no matter how he may acquire such superior lien.

SAME.—*Railroad.*—*Priority of Mortgage Executed to Secure Bonds Sold After Work Performed or Materials Furnished.*—A railway company entered into a contract with a contruction company to build and equip its road. The president of the railway company was the general manager of the construction company. Three months afterward the railway company executed in duplicate a trust deed of its road securing four hundred and forty bonds. One of these duplicates was delivered by its president, more than two months after its execution, to a loan company, and the other retained by the railway company. The railway company also retained the bonds secured when it delivered the trust deed, but, from time to time, delivered them to the general manager of the construction company upon estimates issued to him by the engineers of the railway company. Ten of these bonds were transferred to D. and sixty-six to F., a sub-contractor. The remainder of the bonds, three hundred and sixty-four, were hypothecated by the construction company, but when, where, to, or for how much, was not shown. Material men and mechanics, working for the construction company, filed notices, after the date and delivery of the trust deed, of an intention to claim liens for materials furnished and labor performed in the construction of such railroad. *Held*, that the liens of such material men and laborers were superior to all the holders of said bonds secured by such trust deed.

FRAUD.—*Special Finding.*—Fraud must be found and stated in a special finding as an inferential or ultimate fact, and it is not enough to state the badges, or evidences, of fraud.

The Farmers Loan and Trust Co. *v.* The Canada and St. Louis R'y Co. *et al.*

LIENS.—*Priority Between Special Liens.—Holder of General Liens can not Question.*—Where a fund in court is insufficient to satisfy all specific liens, a creditor having only a general equitable lien can not complain because one of the specific lien-holders is decreed a greater part of the fund than he is entitled to as against the other specific lien-holders.

SAME.—*Payable out of Specific Part of Fund.—Failure to so Decree not Error.*—A mechanic holding a lien awarded his full claim out of a fund in court can not complain because it was not made payable out of the allowance made to another claimant of a part of the fund.

SAME.—*Creditors Holding General Equitable Liens can not Defeat Specific Liens on Corporate Property.*—Creditors obtaining a general equitable lien against an insolvent corporation upon funds brought into court for distribution, have a lien only against the corporation and its shareholders, and not against lien-holders who have specific prior liens upon the corporate property created before the court received the fund.

From the Elkhart Circuit Court.

*W. L. Stonex, H. A. Gardner, — Gardner, — McFadon* and *— Gardner,* for appellant.

*J. H. Baker, F. E. Baker, W. H. Vesey, C. W. Miller, E. E. Mummert, H. D. Wilson, W. J. Davis, J. D. Osborne* and *A. S. Zook,* for appellees.

ELLIOTT, J.—The appellant asserts a prior lien upon a fund derived from the sale of a railroad owned by the Canada and St. Louis Railway Company, and the appellees, other than the railway company, contest the claim of the appellant, asserting that they hold prior liens under the lien laws of this State.

By motion in arrest of judgment the appellant attempts to challenge the counter-claims or cross-complaints filed by the mechanics, material men and laborers. Whether this attempt can prevail depends upon the effect of a decree made during the progress of the case. The recitals of the record material to the immediate points in dispute are these: "And now comes the plaintiff and come also the defendants and cross-complainants, and, by agreement of parties, it is ordered that said complaint and each of said cross-complaints shall be heard and determined by the court without pleadings or

answers, the same as though each complaint and cross-complaint had been formally answered unto by said respective defendants therein, and it is agreed that all matters of defence, set-off, counter-claim and reply, may be given in evidence, by any party against any other party, without further pleadings. And thereupon said complaint and cross-complaints being at issue, under the agreement aforesaid, the same are severally submitted to the court for trial by agreement of all the parties, and the court, having heard the evidence and being sufficiently advised in the premises, finds that the Canada and St. Louis Railway Company is indebted to said plaintiff in the sum of two hundred thousand dollars and more; that said plaintiff and said several cross-complainants have and hold liens on said railway and its property and franchises for money due and owing for the right of way, for work and labor, for materials furnished and by virtue of a mortgage executed by it to the Farmers Loan and Trust Company of New York." We have no doubt that the agreement of the parties and the decretal order cut off a motion in arrest of judgment. Where parties agree that pleadings are sufficient they can not afterwards make any question upon them except the question of jurisdiction of the subject. There is here an express agreement that the "complaint and cross-complaints shall be heard and determined by the court," and in the face of this agreement the appellant can not, after a final hearing, challenge the sufficiency of the cross-complaints. Not only is there an express agreement to the effect stated, but there is also an agreement dispensing with further pleadings and submitting the cause to the court for trial, thus clearly waiving all objections to the pleadings. This agreement was carried into effect by a trial pursuant to the agreement of the parties and a judgment deciding the questions submitted to the court. Even in the absence of an express agreement the voluntary submission of a cause for trial waives the failure to file pleadings forming an issue. *June* v. *Payne*, 107 Ind. 307; *City of Warsaw*

v. *Dunlap,* 112 Ind. 576 ; *Hartlep* v. *Cole,* 101 Ind. 458 ; *Johnson* v. *Briscoe,* 92 Ind. 367 ; *Hege* v. *Newsom,* 96 Ind. 426 ; *Chambers* v. *Butcher,* 82 Ind. 508 ; *Lewis* v. *Bortsfield,* 75 Ind. 390 ; *Felger* v. *Etzell,* 75 Ind. 417. The principle asserted in the cases cited fully authorizes our conclusion that the appellant is precluded from attacking the pleadings ; that principle would, indeed, warrant us in going much further than it is necessary or proper for us to do in this instance.

The decree from which we have copied is conclusive upon the parties in so far as it adjudges that they are each and all holders of liens against the railroad. This appears in the extract we have already copied from the decree, and it is made still clearer by the recital which reads thus : " And the court further finds that the Canada and St. Louis Railway with all of its rights of way, road-bed, depots, depot grounds, and all of its rights, franchises and property, ought to be sold to make assets to pay its indebtedness and liabilities, and that the proceeds of said sale ought to be brought into court, with leave to all parties herein, and all other lienholders who may come in and become parties to the proceedings before the final hearing thereof, to establish their several claims, demands and liens, and the respective lien of each and the priority of the same, as a lien upon the proceeds of said sale. And the court further finds that said railroad property ought to be sold free and discharged of all liens and encumbrances, and the rights of all such lienholders and creditors ought to be transferred to the fund arising from such sale." These provisions, of themselves, make it plain that the court found that all the parties in court at the time the decree was entered were the holders of liens, but if these provisions left any doubt upon the question, it would be removed by a provision in a subsequent part of the decree which reads as follows : "And the court hereby reserves for its future consideration the consideration and determination of the amount of said claims and liens, and the

respective lien of each, and the priority of the same, as a lien upon the proceeds of the sale." One question is settled by this decree, namely, that all the parties have liens; two questions are left undetermined, namely, the amount of their respective liens and their priority. This decree was not objected to in any mode, but, on the contrary, was acquiesced in by the parties, and, as it was made upon a trial pursuant to the express agreement of the parties, it is conclusive upon them as to the questions tried and determined.

It is said that the decree is interlocutory, and, therefore, not conclusive. We are not inclined to regard it as a mere interlocutory decree, inasmuch as it was made after the submission of the cause for trial and after hearing the evidence, and is, in its nature, final rather than interlocutory. It may not, perhaps, be true that it is final in such a sense that an appeal would lie from it, but it has in many respects the qualities and effect of a final decree. But conceding, for the sake of the argument, that it is a mere interlocutory decree, still it must be held that as to this case and upon the questions submitted for trial, and after trial fully adjudicated, it is final and conclusive. *Ray* v. *Law*, 3 Cranch, 179; *Morey* v. *King*, 49 Vt. 304. In the case of *Fleenor* v. *Driskill*, 97 Ind. 27, this doctrine is carried much beyond the limits to which we carry it in this instance. We add, to prevent misconception, that we neither hold, nor mean to hold, that the decree in this instance was beyond change by the court while the proceedings were *in fieri*, nor do we hold that it would have constituted a conclusive adjudication had no final decree been rendered; all that we can with propriety decide is, that as to this particular case it is conclusive because rendered after trial and followed, without change, by a final decree.

The questions which remain for decision are those not adjudicated by the decree which we have considered and to which we have given a construction. The first of these questions arises upon the contention of the appellant that the ap-

pellees are sub-contractors, and as such are bound to take payment in bonds, for the reason that the principal contractors agreed to accept bonds in payment. It is probably true that one who in strictness occupies the position of a subcontractor is bound to accept payment as provided in the principal contract. *Stewart* v. *Wright*, 52 Iowa, 335 ; *Jones Lumber Co.* v. *Murphy*, 64 Iowa, 165 ; *Stout* v. *Golden*, 9 W. Va. 231 ; *McKnight* v. *Washington*, 8 W. Va. 666 ; *Bowen* v. *Aubrey*, 22 Cal. 566 ; *Henley* v. *Wadsworth*, 38 Cal. 356 ; *Reeve* v. *Elmendorf*, 38 N. J. L. 125 ; *Campbell* v. *Scaife*, 1 Phila. 187. But the conclusion asserted by appellant requires another premise to make it valid, and that premise is, that laborers and material men are subcontractors. This premise is assumed by appellant's counsel without proof, and we regard the assumption as an illicit one, for we do not believe that a laborer, working by the day, or a material man, who delivers ties or lumber, is a subcontractor within the meaning of our lien law. We suppose a sub-contractor to be one who takes from the principal contractor a specific part of the work, as, for instance, one who agrees with the principal contractor to construct ten miles of a railroad out of a line of twenty or more miles which the principal contractor had undertaken to build. Certainly, no other conclusion will harmonize with the doctrine long maintained by this court. *Barker* v. *Buell*, 35 Ind. 297 ; *Colter* v. *Frese*, 45 Ind. 96. Other courts have more clearly than our own marked and enforced the distinction between sub-contractors and laborers, as well as between sub-contractors and material men. *Duncan* v. *Bateman*, 23 Ark. 327 ; *Huck* v. *Gaylord*, 50 Texas, 578 ; *Pitts* v. *Bomar*, 33 Ga. 96.

If, however, we are wrong in holding that laborers and material men are not sub-contractors within the meaning of our statute, still the appellant can not succeed upon the point under immediate discussion. To entitle it to succeed, even

ûpon its own theory of the law, it must show a proper tender of bonds, otherwise the claims of the lienors are payable in money, for money is the ordinary medium of payment, and is always demandable where there is no agreement providing for payment in property, as well as where there is such an agreement, but no tender by the debtor. *Nipp* v. *Diskey*, 81 Ind. 214; *Ireland* v. *Montgomery*, 34 Ind. 174; *Parks* v. *Marshall*, 10 Ind. 20; *Mason* v. *Toner*, 6 Ind. 328; *Duerson* v. *Bellows*, 1 Blackf. 217; *Hancock* v. *Yaden*, 121 Ind. 366, and cases cited; *Vansickle* v. *Furgeson*, 122 Ind. 450. It is unnecessary to decide whether in such a case as this a strict legal tender is required, or whether an equitable tender would be sufficient, for there was neither an offer to pay in bonds nor a tender of any kind.

The next question open to discussion, and requiring decision, is as to the extent of the lien of the laborers and material men. In order to properly consider this question it is necessary to state the facts from which it emerges. The laborers and material men did work upon and furnished material for a part of the railroad, and filed notices of liens. The railroad extends through several counties, and is a continuous line from a point in this State to a point in the State of Michigan. The contention of the appellant is that the railroad is an entirety, and that as notices of liens were not filed in all the counties no such lien was acquired as entitles the appellees to share in the fund derived from the sale of the entire road. We fully agree with appellant's counsel that a continuous line of railroad is to be treated as an entirety, and we adjudge that as such it must be sold, for it would be unjust to lienholders, as well as to the railroad company, to sell a bridge, a culvert, or a few rods, or even mile, of the railroad. *Midland Railway Co.* v. *Wilcox*, 122 Ind. 84; *Louisville, etc., R. W. Co.* v. *Boney*, 117 Ind. 501; *Muller* v. *Dows*, 94 U. S. 444. But it by no means follows that because the entire road must be sold it is necessary that a lien should be acquired on every part of it. The right to en-

force the lien necessarily requires a sale of the whole road, since it can not be sold in fragments ; but neither the right to the lien, nor the mode of acquiring it, is affected by this consideration. The acquisition of a lien results from a compliance with the requirements of the statute, and is not affected by the consequences which flow from its acquisition. If the claimant does what the statute requires he obtains a lien, and in order to enforce the lien the law declares what shall be done ; but over the question of enforcement the lienor has no control. If he obtains a lien in the authorized mode he has a right to have it enforced as the law directs, and not otherwise. The claimant must undoubtedly do what the statute commands ; but when he does this his right is complete, and subsequent considerations affect the mode of procedure, not the substantive right to a lien. *Dana* v. *Railroad Co.,* 27 Ark. 564 ; *Cox* v. *Western Pacific R. R. Co.,* 44 Cal. 18 ; *Cox* v. *Western Pacific R. R. Co.,* 47 Cal. 87 : *Knapp* v. *St. Louis, etc., R. W. Co.,* 74 Mo. 374, and *Cranston* v. *Union Trust Co.,* 75 Mo. 29, are relevant to one branch of our discussion, for they affirm that a railroad must be treated as an entirety ; but they are not relevant to the question whether a lien filed in one county entitles the lienor to invoke judicial aid for the enforcement of his right. They do not determine whether or not a lien may be acquired that will entitle the holder to enforce it, although it is acquired by filing notice in only one county. That we regard as the only question here, for the demand of the lienholders is to share in the fund derived from the sale of the entire road. There seems to have been no authoritative decision of the question in *Boston* v. *Chesapeake, etc., R. R. Co.,* 76 Va. 180, although the reasoning of the court indicates that it was inclined to the opinion that notice must be filed in every county traversed by the road. We can not assent to this reasoning, as it would break down the policy of our laws protecting laborers to require them to file notices in every county, for laborers whose claims were small

could not afford to file notices all along the line of the railway. The consequence to which the reasoning would lead goes very far to prove it unsound. If it be true that notices must be filed along the entire line, then it must also be true that the laborer must follow the railway throughout all the States it traverses, even if it extended from seaboard to seaboard across the whole country ; and, surely, it can not be legally possible that he must pursue such a course. It seems clear to us that if a lien is acquired in any county as the law directs, then it is enforceable as the law provides. If there is a lien upon any part of the railroad it is enforceable against all the road, because all the road must be sold ; but there is none the less a lien on this account. The acquisition of the lien is one thing, the mode of its enforcement another, and it does not follow that to acquire a lien the mode of enforcement must control the proceedings of the lienor, for with the question of enforcement he has no immediate concern until there is need of judicial assistance. The acquisition of the lien comes first, the question of its enforcement is an independent and subsequent consideration. The principle we enforce is not a novel one ; it is almost as old as the common law itself, for it is involved wherever there is a lien for repairs upon personal property of an indivisible nature. In all such cases the entire thing must be sold although the mechanic has improved or repaired only an insignificant part of it.

If we are right in what we have said, it must follow that if any valid lien at all was acquired it entitles the lien-holder to share in the fund brought into court for distribution. Whether any lien was acquired upon any part of the railroad depends upon the statute authorizing the acquisition of liens upon railroads. If that statute requires that notices be filed in every county there is no lien upon the road. If the statute requires a notice in only one county there is a lien extending to the entire fund for the reason that the railroad is an entirety and as such must be sold. This is the doctrine asserted in the case of *Louisville, etc., R. W. Co.* v.

*Boney*, 117 Ind. 501, for in that case the notice was filed in one county and yet it was held that the lien must be enforced against the road as an entirety. The authorities referred to in that case prove that where a judgment establishing what may be called a personal liability, is obtained, it is to be enforced against the entire railroad and not by the sale of an isolated part. *Black* v. *Delaware, etc., Canal Co.*, 22 N. J. Eq. 130; *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Muller* v. *Dows, supra; East Alabama R. W. Co.* v. *Doe*, 114 U. S. 340; *Stewart's Appeal*, 56 Pa. St. 413; *Richardson* v. *Sibley*, 11 Allen, 65; *Foster* v *Fowler*, 60 Pa. St. 27. The same doctrine is declared and enforced in the case of *Midland R. W. Co.* v. *Wilcox, supra*. There is nothing in the opinion in the case last cited which authorizes the conclusion that a notice of an intention to hold a lien must be filed in every county traversed by the railroad; on the contrary, a different rule was impliedly suggested if not expressly declared. It was there said: " Where, as here, a line of railroad, although it extends through two or more counties, is treated in the contract; and in the performance of the work under the contract, as a continuous line of road, the contractors are not required, as against the railroad company, however it may be as to mortgagees or judgment creditors, to divide the road into parts corresponding to the counties it traverses, and enforce the lien in each county separately." It was not necessary to decide in that case what the rule is where mortgagees are interested, nor was it necessary to decide whether notice of a lien must be filed in every county where work was done only in one, and there was no decision upon those questions. It is not necessary to decide in this case whether in cases where work is done in more than one county notices must be filed in all the counties, for, as we understand the finding of the trial court, it was favorable to the appellant upon this question. We do decide, however, that where a lien is obtained upon a railroad by filing such a notice as the law requires in one

county, the lien thus created extends to the fund derived from a sale of the entire railroad pursuant to an interlocutory decree rendered after trial, and in cases where the parties by agreement submit the questions to the court for trial at the intermediate hearing.

We here adjudge that the general principle asserted in *Midland R. W. Co.* v. *Wilcox, supra,* applies to mortgagees as well as to owners, and that a valid lien once acquired reaches the entire railroad as a unit. In the case of *Brooks* v. *Railway Co.,* 101 U. S. 443, it was held that where a mechanic files his notice within the time and in the mode prescribed by the statute, he has, as against the mortgagee, a paramount lien upon the entire road. In disposing of the argument that the lien did not extend to the entire road, the court said: "The argument seems to us extremely technical, and at war with the principle in which liens are allowed for work done subsequently to the creation of a mortgage. That doctrine, or rather the statute which the court construed as giving a permanent lien under such circumstances, was in existence when the mortgage of the appellants was made. It entered into and became part of their contract. They knew that the road was yet to be built, and that while such building would add to the value of their security, the law gave to the men whose labor and money built it a lien superior to that of the mortgage. Now that the venture in which both embarked is to end in loss to one or the other of them, there is no judicial propriety in straining the law to limit the rights of one party rather than those of the other. If that law by its fair construction gives the mechanic a lien for a few thousand dollars on the whole road, instead of a part of it, the law should prevail." This reasoning clearly demonstrates the validity of the conclusion that a lien once effectually acquired fastens upon the entire road as a unit, and is not confined to mere detached parts of it. Any other rule would, as we have suggested, in many cases render the lien statute entirely nugatory, since it would preclude the enforcement of the lien, and in many

other instances it would work great injustice to the stockholders of a railroad corporation. But there is another consideration not to be overlooked, and it is one which it must be presumed entered into the minds of the law-makers; that consideration is this: The public have a right to have a railroad remain an entirety, and it would be destructive to public interest to permit it to be broken up into disjointed and practically useless fragments. *Indiana, etc., R. W. Co.* v. *Allen,* 113 Ind. 581, and authorities cited; *Midland R. W. Co.* v. *Wilcox, supra, vide* p. 95. Sound policy and due regard for public welfare, as well as for the rights of individuals, require that a railroad shall be treated as an entirety, both as to the mode of acquiring a lien and as to the mode of its enforcement.

The remaining question may be thus stated: Is the lien of the appellant's mortgage superior to the liens of the appellees? In order to intelligently discuss this question it is necessary to state the material facts out of which it arises. Those facts may be thus summarized: On the 28th day of May, 1888, the railway company entered into a contract with the Burns Construction Company to build and equip its road. Burns was the president of the railway company and also the general manager of the construction company. On the 28th of August, 1888, the railway company ordered the execution of a trust deed, and the instrument was written and signed in duplicate; one of the duplicates was delivered by Burns to the Farmers Loan and Trust Company on the 8th day of October, 1888, the other was retained by the railway company. The bonds which the trust deed was executed to secure were retained by the company that executed the mortgage, but from time to time bonds were delivered to Burns upon estimates issued to him by the railway company's engineer. Ten of the bonds were transferred to William Dallin, and sixty-six were transferred to John Fitzgerald, a subcontractor. The remainder of the bonds, three hundred and sixty-four in number, were hypothecated by the Burns Con-

struction Company, but when, where, to whom, or for how much, is not shown.

In considering the question of priority one of the important things to be kept in mind is that the mortgage was executed upon property that had, in fact, no existence, for the railroad had not been built. That there is a material difference between a case, such as this, where the railroad has not been built and a case where the railroad has been constructed, is so evident that no one can fail to perceive it the instant his attention is directed to the matter. As held in *Brooks* v. *Railway Co.*, *supra*, parties must, in such a case as this, be deemed to have contracted with reference to the existing condition of things, so far as they were open to observation. The mortgagee must have known that his security was valueless as long as there was no road in existence, and it must have known, also, that labor, materials and money would be required to build the road. It was bound to know, too, what the law was, for, as said in *Brooks* v. *Railway Co.*, *supra*, "It entered into and became a part of their contract." This general rule has been repeatedly declared and enforced by this court. *Carr* v. *State, ex rel., ante*, p. 206; *Hancock* v. *Yaden*, *supra*, see p. 370; *Long* v. *Straus*, 107 Ind. 94; *Bryson* v. *McCreary*, 102 Ind. 1; *Edwards* v. *Johnson*, 105 Ind. 594; *Bass* v. *Doerman*, 112 Ind. 390. In *Warren* v. *Sohn*, 112 Ind. 213, the principle we are discussing was applied to the case of a lien asserted by a miner, and it was held that the lien was superior to a mortgage. But the present case is much stronger than the one referred to, for here there was, in fact, no property in existence when the mortgage was made; the property upon which the mortgage finally fastened was created by the labor, materials and money of the appellees. We are strongly inclined to doubt whether the mortgage lien would be paramount even if the bonds which the mortgage was executed to secure had been delivered before any notices of liens were filed. Very strongly reasoned decisions declare that the

liens of the mechanics are superior to the liens of the mortgage in cases where the mortgage is executed before the construction of the railroad. *Neilson* v. *Iowa, etc., R. W. Co.,* 44 Iowa, 71 ; *Equitable Life Ins. Co.* v. *Slye,* 45 Iowa, 615. We need not, however, decide this question, but it is proper to say that as the labor, materials and money of the appellees gave all there is of value to the property claimed under the mortgage, the mortgagee ought to show a clear, strong, superior right in order to defeat the claims of those who in reality brought the property into existence. The doubt in our minds is whether the mortgagee's lien can in any event be justly held to be the prior one. We have no doubt that if the mortgagee can succeed at all it must be because it is shown clearly and strongly that the mortgagee is a *bona fide* purchaser. In our judgment the appellant has shown no such right as entitles it to the paramount lien.

It is true that the trust deed or mortgage was placed in the hands of the mortgagee or trustee before some of the notices were filed, but the instrument securing the bonds was a mere shadow, for had no bonds ever been delivered to *bona fide* holders, the instrument would never have been effective against these lien-holders. We are far within the authorities in asserting this, as they carry the doctrine much farther. *Hough* v. *Osborne,* 7 Ind. 140; *Garrett* v. *Puckett,* 15 Ind. 485; *Hubbard* v. *Harrison,* 38 Ind. 323; *Felton* v. *Smith,* 84 Ind. 485, see p. 495; *Reeves* v. *Hayes,* 95 Ind 521; *Day* v. *Bowman,* 109 Ind. 383; *Midland R. W. Co.* v. *Wilcox, supra.* The delivery of the mortgage or trust·deed alone did not destroy the priority of the liens of the appellees, for the delivery of such an instrument can not, of itself, defeat equitable or legal claims, since it is essential that one who asserts a right against a legal or equitable claim should show that he parted with value before notice of such equitable or legal right. *Anderson* v. *Hubble,* 93 Ind. 570, and cases cited; *Hunsinger* v. *Hofer,* 110 Ind. 390. This is the rule in ordinary cases, and, certainly, it must govern a

case like this, where the mortgagee seeks to defeat the claims of those whose labor, materials and money created the property which it is sought to subject to the lien of the mortgage. The mortgagee must succeed, if at all, as a *bona fide* holder of bonds executed under the mortgage; it can not, as against the claims of laborers, mechanics and material men, be deemed a *bona fide* holder unless it affirmatively shows that it paid value for the bonds before notice of the liens. The rule in analogous cases is well settled in this State, and the strong equities of the appellees call for its liberal application in this instance. *Giberson* v. *Jolley*, 120 Ind. 301; *First Nat'l Bank* v. *Ruhl*, 122 Ind. 279. There is reason for saying that it was the duty of the party buying the bonds to ascertain whether a lien had been placed on the property prior to the time of his acquisition of those instruments, but we do not go so far as that in this case. *Woodbury* v. *Fisher*, 20 Ind. 387. We are not here seeking a general rule that shall apply to every case resembling the present, nor do we attempt to lay down any such rule; we simply adjudge that in such a case as this the mortgagee can not prevail over laborers and material men without showing that it is a *bona fide* holder of the principal debt in all that the term *bona fide* holder implies. It can not in a case like this, where there was no railroad in existence when the mortgage was delivered, be deemed a *bona fide* holder as against laborers, mechanics and material men without showing that, before notice of the acquisition of the liens under the statute, a fair value was paid for the bonds. The purchase of negotiable instruments at a price much less than their value may be, in some instances, evidence tending to show that the holder had knowledge that the instruments were not obtained or transferred fairly or honestly. *Schmueckle* v. *Waters*, 125 Ind. 265. To such a case as this that rule applies, for justice demands that the claimant of a superior lien should, at least, affirmatively

show that a fair price was paid for the bonds before notices were filed under the lien law.

If the Burns Construction Company, the principal contractor, had become and remained the owner of the bonds in absolute good faith, it could not have defeated those from whom it purchased materials nor those whom it employed to do work upon the railroad. It is very clear that a principal contractor can not defeat the liens of those whose debtor he is for work and materials, by asserting the lien of a mortgage executed by the owner by whom he was employed to build a house, a mill or a railroad. To deny this would be to affirm that the principal contractor may leave his workmen unpaid, and, for his own benefit, exhaust the property which supplies the chief security of all. The plainest principles of equity require that the contractor shall not be allowed to defeat the liens of laborers, mechanics or material men by asserting a lien superior to theirs, no matter how that lien may be acquired. The delivery of the bonds to the Burns Construction Company did not, therefore, vest title so as to cut out the appellees, and unless the appellant acquired the bonds as a *bona fide* holder, after the delivery to the Burns Company, it can not prevail against the appellees. If it is the mere assignee of the Burns Company, it can not defeat the lien-holders, for, as a mere assignee, it can hold by no better title than its assignor, hence it is evident that the only capacity in which it can by any possibility succeed is that of a *bona fide* holder of instruments negotiable under the law merchant.

The cases of *Choteau* v. *Thompson*, 2 Ohio St. 114, *Crowell* v. *Gilmore*, 18 Cal. 370, and *Preston* v. *Sonora Lodge*, 39 Cal. 116, are not relevant to the point in dispute. In those cases there was no question as to the creation or purchase in good faith of the debt evidenced by the mortgage under which the superior lien was asserted, so that granting (but by no means deciding) that the doctrine asserted by those cases is sound, still it does not control this case, for here the

question is whether the appellant, having acquired title through a party who; as against his own employees and subcontractors, could not be a *bona fide* holder of the negotiable instruments, can defeat the prior equities of such persons without showing that it paid value for those instruments before the equities, in the form of statutory liens, fastened upon the mortgaged property. If the Burns Construction Company had occupied the position of a *bona fide* holder of the bonds in the full sense of the term, the appellant would be in a much better position; but, as we have suggested, until it climbs to a higher place than that of a mere assignee of the Burns Construction Company, it has no legal or equitable rights greater than those which resided in its assignor. The Burns Company could not have defeated its own employees and sub-contractors, and its assignee stands in its place.

We do not doubt that in cases where all is fair and there is no wrong practiced, the presumption is, as against the maker of a negotiable instrument, that the holder paid value for the instrument of which he shows himself to be the owner. *Collins* v. *Gilbert*, 94 U. S. 753; *McCurdy's Appeal*, 65 Pa. St. 290; *Duncan* v. *Gilbert*, 29 N. J. L. 521; *Valette* v. *Mason*, 1 Ind. 288. But, even as against the maker of such an instrument, where there is fraud the rule is different. *Giberson* v. *Jolley*, *supra*; *Harbison* v. *Bank*, 28 Ind. 133. It is, however, unnecessary to enter upon a consideration of that general subject, for the question here is, not as to the right of a maker of a negotiable instrument to defend, but the question with which we are here concerned is, what equities shall prevail and in what order shall a fund in the hands of the court be distributed to different classes of claimants? It is evident, therefore, that the presumption which obtains in ordinary cases can not prevail where those whose labor and materials brought the mortgaged property into existence are asserting liens against a mortgagee claiming under the principal contractor by whom the mechanics

and laborers were employed.  In order to defeat the strong equities of the lien-holders, there must, upon every principle of justice, be evidence that fair value was paid for the bonds, for when it is made to appear that the railroad existed only in the minds of its projectors at the time the mortgage and bonds were placed in the hands of the original contractor, there is no foundation for the presumption which prevails where no element of fraud or unfairness taints or poisons the transaction.  Whatever may be said of such cases as *Dunham* v. *Cincinnati, etc., R. W. Co.*, 1 Wall. 254, and *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459, in view of the later cases in the same court to which we have referred, it is, at all events, safe to affirm that they are not of controlling influence in a case such as this, where it affirmatively appears that the bonds were pledged by a principal contractor who could not, without a violation of good faith, enforce the bonds to the injury of the laborers and mechanics employed to build the railroad.  It may also be said of those cases that there was affirmative evidence that full value was paid for the bonds, and no question arose on that point.  Our ultimate conclusion is that the appellees were justly adjudged to have the prior lien upon the fund derived from the sale of the railroad.  No other conclusion will, as we believe, give just effect to our statute awarding liens to laborers, mechanics and material men.

Cross-errors alleged by some of the appellees present questions which require consideration.  The first of these questions arises on the claim put forward by counsel that the transaction between the Burns Construction Company and the railway company was a fraud upon the rights of the creditors.  While there are circumstances indicative of fraud, there is no finding that there was fraud in fact, and hence the complaining appellees are not entitled to judgment, upon the ground that the transaction was a fraud upon their rights.  It is settled by our decisions that fraud must be found and stated as an inferential or ultimate fact, and that it is not

sufficient to state badges of fraud, or the evidences of fraud, in a special finding.   *Cicero Tp.* v. *Picken,* 122 Ind. 260; *Kirkpatrick* v. *Reeves,* 121 Ind. 280; *Wilson* v. *Campbell,* 119 Ind. 286; *Phelps* v. *Smith,* 116 Ind. 387; *Bartholomew* v. *Pierson,* 112 Ind. 430; *Stix* v. *Sadler,* 109 Ind. 254; *Elston* v. *Castor,* 101 Ind. 426.

The second of the questions presented by the assignment of cross-errors arises on the order made allowing the claim of the sub-contractor, John Fitzgerald, and giving it an equal place with other claims secured by liens to the exclusion of unsecured claims.   In our judgment the trial court did not err to the prejudice of the complaining unsecured creditors; for, if Fitzgerald's claim should be cut down as they insist, still, as he was, at all events, a lien-holder, they can not have priority over him to the exclusion of the appellant.   If his claim were cut down the appellant would undoubtedly be entitled to the benefit; for after the payment of the prior lien-holders it has the superior claim.   If the amount realized from the sale of the railroad had been sufficient to pay the appellant, and all other lien-holders, there would be plausibility in counsels' position; but as the amount derived from the sale was not sufficient to discharge all the liens their position is untenable.   It seems quite clear that where a fund, brought into court for distribution, is insufficient to satisfy all specific liens, a creditor having only a general equitable lien can not complain because one of the specific lien-holders is decreed a greater part of the fund than he is entitled to as against other specific lien-holders.

The question presented by the contention of Charles Trainor must be decided against him.   His contention is that, although he was allowed his claim yet there was error because it was allowed out of the general fund, and not out of the part allotted to the sub-contractor, Fitzgerald.   This contention can not prevail, for the reason that where a mechanic is awarded all he is entitled to out of a fund in court he can

The Farmers Loan and Trust Co. *v.* The Canada and St. Louis R'y Co. *et al.*

not be heard to complain because it was not made payable out of the allowance made to another claimant of the fund. If his claim is satisfied he is in no plight to ask anything more.

It is true that creditors may obtain a general equitable lien as against an insolvent corporation upon funds brought into a court of chancery for distribution. *Upton* v. *Tribilcock,* 91 U. S. 45; *Sanger* v. *Upton,* 91 U. S. 56; *Wood* v. *Dummer,* 3 Mason, 308; *Rouse* v. *Merchants' Nat'l Bank,* 46 Ohio St. 463. But this equitable lien prevails against the corporation and its shareholders and not against lien-holders who have specific prior liens upon the corporate property created before the court received the fund. The difficulty which counsel can not here surmount grows out of the fact that specific liens existed against the property converted into the fund, for where such specific liens exist they outrank mere general equitable liens, and the order of priority is time. *Paxton* v. *Sterne, post,* p. 289. It is evident from what has been said that the rule which governs where the contest is waged between shareholders and creditors can not apply where the controversy is between the holders of specific liens acquired before the conversion of the property into an equitable fund and creditors who have a mere general equitable lien upon the fund. This principle is decisively against the appellees who assign cross-errors.

Judgment affirmed.

Filed Feb. 17, 1891.